Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHANEL HORNER,

                    Plaintiff,

      vs.

CITY OF SEATTLE; OFFICER ROBERT
STROZIER, in his individual capacity; and
LINCOLN TOWING ENTERPRISES,
INC.,

                  Defendants.

No.  2:24-cv-01488-RSL

**DEFENDANTS ROBERT
STROZIER AND THE CITY OF
SEATTLE'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)**

## I.    RELIEF REQUESTED

Defendants City of Seattle (hereinafter "City") and Robert Strozier respectfully request that the Court dismiss this action with prejudice pursuant to Fed R. Civ. P. 12(b)(6).

## II.    STATEMENT OF FACTS

The following factual statements and allegations are all taken from Plaintiff Chanel Horner's complaint (the "Complaint"). (Dkt. # 1-2, p. 1-14.) In September 2022, Ms. Horner was financially "destitute," unemployed, and "houseless." (Dkt. # 1-2, p. 4.) At the time, Ms. Horner was living in a

**DEFENDANTS ROBERT STROZIER AND THE
CITY OF SEATTLE'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)** - 1
(2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

bus parked on the 5000 block of Colorado Avenue South within the City, where she kept all her possessions. *Id.*

Around late August or early September of 2022, Ms. Horner learned that the City intended to "sweep," or "remediate," all vehicles parked on the 5000 block of Colorado Avenue South on September 15, 2022. *Id.* Although Ms. Horner intended to remove her vehicle from the remediation area prior to September 15, she remained unaware her bus was inoperable until the evening of September 14, 2022, when she discovered it was out of compressed natural gas, the fuel her vehicle required. *Id.*

On the morning of the day of remediation, September 15, 2022, Ms. Horner contacted personnel from REACH, a homelessness outreach program of Evergreen Treatment Services, and asked for assistance. *Id.* Because compressed natural gas could not be delivered to her location, REACH allegedly arranged to have a third party tow Ms. Horner's bus to a nearby location where compressed natural gas was available. (Dkt. # 1-2, p. 3-4.)

Later that morning, Officer Robert Strozier, a parking enforcement officer employed by the Seattle Police Department, arrived at Ms. Horner's location. (*Id.* at p. 5.) The Complaint alleges that after Ms. Horner informed Officer Strozier of her circumstances, Officer Strozier told Ms. Horner that a tow truck was on the way, and that Ms. Horner's bus would be impounded if it was not moved prior to the tow truck arriving. *Id.*

When a tow truck from Lincoln Towing arrived at the location, the third-party tow truck REACH had arranged for Ms. Horner had still not arrived and Ms. Horner offered no time frame of when it could be expected to arrive. (See Dkt. # 1-2, p. 4.) Ms. Horner claims she asked Officer Strozier not to impound her vehicle, or, alternatively, for Lincoln to tow her bus to a fueling station instead of impounding it. *Id.* Officer Strozier allegedly denied both requests, and Ms. Horner's bus

**DEFENDANTS ROBERT STROZIER AND THE**
**CITY OF SEATTLE'S MOTION TO DISMISS**
**PURSUANT TO FRCP 12(b)(6)** - 2
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

was impounded by Lincoln Towing. *Id.* Later that day, Ms. Horner found her vehicle at a Lincoln Towing storage lot in North Seattle. *Id*. She claims she was told by a Lincoln employee that she could not request an "impound hearing" because she was not the registered owner of the vehicle. *Id.*

Despite this initial refusal, Lincoln Towing agreed to return Ms. Horner's bus to her, and, on November 9, 2022, she reclaimed possession of it. (Dkt. # 1-2, p. 5.) Ms. Horner claims that several items of personal property (including an urn that contained her father's remains) that had been in the vehicle when it was impounded were missing, and that her vehicle was damaged both internally and externally while in Lincon's possession. *Id.* at 5-6.

Months passed, but Ms. Horner eventually had an impound hearing in Seattle Municipal Court on April 11, 2023, during which she argued the September 15 impound of her bus was improper. (Dkt. # 1-2, p. 6.) The municipal court found that Officer Strozier had a valid basis to impound Ms. Horner's bus (i.e., it found the infraction had been "committed" by Ms. Horner), but it otherwise agreed with Ms. Horner, finding that the impound itself was improper. (See Dkt # 1-2, Exhibit A.) Although the municipal court issued no written factual findings or conclusions of law, Ms. Horner alleges in her complaint that the municipal court found the impound was improper because Officer Strozier "did not consider reasonable alternatives" to the impound, and that a reasonable alternative was "actually available." (Dkt. # 1-2, p. 7.)

### III.    ISSUES PRESENTED

A.  Does Washington law recognize causes of action in tort predicated on violations of the Washington State Constitution? No.

B.   Is the claim brought under Washington's Homestead Act valid if Plaintiff has failed to adequately demonstrate that the City attempted an attachment, execution, or forced sale of her property? No.

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 3
(2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

C. Is Defendant City of Seattle exempt from Washington's Consumer Protection Act as a matter of law? Yes.

D. May Plaintiff maintain a conversion claim against Defendants City of Seattle and Officer Strozier when it is undisputed that the impoundment was authorized by law? No.

E. Does Plaintiff adequately plead claims against the City of Seattle brought under 42 U.S.C. § 1983 when the complaint fails to allege the existence of a municipal policy, custom, or practice? No.

F. Is Officer Strozier entitled to immunity from claims brought by Plaintiff under 42 U.S.C. § 1983? Yes.

G. Did the City have a legal duty to prevent a third party from intentionally harming Plaintiff's vehicle while it was in Lincoln Towing's sole possession? No.

## IV.    ARGUMENT

### A.  Legal Standard

Under FRCP 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.1990). In addition to the facts alleged in the Complaint, the Court may also consider "certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 4
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

into a motion for summary judgment." *Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662 at 678-679. The court is not required to accept allegations that are merely conclusory, unwarranted deductions of fact, unreasonable inferences, or legal conclusions. *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007) (citations omitted); *Twombly,* 550 U.S. 544 at 555 (*internal citations omitted*). Dismissal is appropriate when amendment of a complaint would be futile. *James v. Giles,* 221 F.3d 1074, 1077 (9th Cir.2000).

**B.  Plaintiff's claims based on alleged violations of the Washington State Constitution fail as a matter of law.**

In her complaint, Plaintiff alleges the City and Officer Strozier violated rights guaranteed by the Washington State Constitution. (Dkt. #1-2, p. 7.) Specifically, she alleges the City and Officer Strozier violated her right to be free from unlawful intrusions into her private affairs,[1] and she alleges the City violated her right to be free from the imposition of excessive fines.[2] These claims should be dismissed because causes of action in tort based on violations of the Washington State Constitution do not exist under Washington Law. See*, e.g., Blinka v. Wash. State Bar Ass'n,* 109 Wn.App. 575, 591, 36 P.3d 1094 (2001); *Reid v. Pierce County*, 136 Wn.2d 195, 213-14, 961 P.2d 333 (1998); *Spurrell v. Bloch*, 40 Wn.App. 854, 860-61, 701 P.2d 529 (1985); *Sys. Amusement, Inc. v. State,* 7 Wn.App. 516, 517, 500 P.2d 1253 (1972). Washington courts have consistently denied all invitations to recognize such causes of action for over a century. See *State v. Mays,* 57 Wash. 540, 542-43, 107

---

[1] Wash. Const. art. I, § 7.
[2] Wash. Const. art. I, § 14.

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 5
(2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

P. 363 (1910) ("the common law prevails in this state except as modified by statute"); see also *Potter v. Washington State Patrol*, 165 Wn.2d 67, 77, 196 P.3d 691, 695 (2008) ("we are hesitant to recognize an abrogation from the common law absent clear evidence of [legislative] intent").

Washington law recognizes either common law causes of action or causes of action clearly created by legislative action[3], and "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation." *Blinka*, 109 Wn. App. at 591 (citing *Sys. Amusement, Inc.,* 7 Wn.App. at 517) (internal quotations omitted).

Because it is beyond dispute that there are no causes of action in tort based on alleged violations of the Washington State Constitution under Washington law, both Plaintiff's "fourth cause of action" (based on an alleged violation of Wash. Const. art. I, §7) and "sixth cause of action" (based on an alleged violation of Wash. Const. art. I, § 14) should be dismissed with prejudice.

**C. The Complaint fails to state a claim under the Homestead Act as the allegations of the Complaint fail to plausibly suggest that the City attempted an attachment, execution, or forced sale against Plaintiff's homestead.**

In her "eighth cause of action," Plaintiff claims the City is liable to her for "violat[ing] the Washington Homestead Act by attaching her home as security for an impound debt and threatening a forced sale of her vehicle home[.]" (Dkt. #1-2, p. 8.) Ironically, Plaintiff relies on *City of Seattle v. Long*[4] to support this legal theory, a case in which (as explained below) the Washington Supreme Court rejected an identical legal theory by the same counsel of record under facts functionally equivalent to those before the Court. Ultimately, this claim must be dismissed because Washington's homestead exemption is only applicable as a "shield" against certain creditor actions, and Plaintiff

---

[3] See *Mays*, 57 Wash. at 542-43.
[4] 198 Wn.2d 136, 493 P.3d 94 (2021)

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 6
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

has not put forth sufficient facts indicating any such actions have taken place.

The Homestead Act "protects debtors against specific creditor actions." *Long,* 198 Wn.2d at 152. Those specific creditor actions are (1) an attachment (2) an execution, and (3) a forced sale. *Id.;* see also, RCW 6.13.070(1) (homesteads are "exempt from attachment and from execution or forced sale"). An "attachment" occurs when property is physically seized "*to secure a judgement* or *to be sold in satisfaction of a judgment.*" *Id.* (citing Black's Law Dictionary at 157 (11th ed. 2019)) (emphasis added).  An "execution" is a "judicial enforcement of a money judgment" which is usually accomplished through a lien, or "by seizing and selling the judgment debtor's property." *Id.* (citing *First Nat'l Bank v. Tiffany,* 40 Wn.2d 193, 196, 242 P.2d 169 (1952)). Finally, a "forced sale" is a nonconsensual sale of property "to recover a debt." *Id.* (citing *Felton v. Citizens Fed. Sav. & Loan Ass'n of Seattle*, 101 Wn.2d 416, 418, 679 P.2d 928 (1984)).

The Homestead Act "operates as a shield" to protect debtors against these three creditors' actions; "it is not a sword to prevent such actions." *Long*, 198 Wn.2d at 153. Washington courts recognize that the purpose of the Homestead Act is to simply allow courts to determine the validity of a homestead claim "whenever it is *asserted as a defense"* against the three specific creditor actions (attachment, execution, or forced sale) enumerated in the Act. See *id.* (citing *Enyart v. Humble*, 17 Wash. App. 181, 184, 562 P.2d 648 (1977); *City of Algona v. Sharp*, 30 Wash. App. 837, 638 P.2d 627 (1982)) (emphasis in original). The Homestead Act "does not call into question the city's independent authority to impound a vehicle." *Long*, 198 Wn.2d at 158. The Act instead protects homesteads against a creditor's attachment, execution, or forced sale, when and if those specific actions occur. *Id.* For example, if a homestead were to be sold under execution, the owners of the homestead could assert the protections of the Homestead Act as part of an action to quiet title. See *Domke v. Beck*, 18 Wn.2d 568, 573, 139 P.2d 1017 (1943).

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 7
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The facts and legal procedure underlying the *Long* decision are remarkably similar to those before the Court. Mr. Long parked his truck, in which he lived and kept all his belongings, on property owned by the City of Seattle, and it remained there for the next three months. *Long*, 198 Wn.2d at 143. Eventually, the city issued a 72-hour impound notice and affixed it to Mr. Long's vehicle, indicating that Mr. Long's vehicle would be impounded if it was not removed from the location within that timeframe. *Id.* Mr. Long was unable to move his truck because it was inoperable, and so the city authorized his vehicle for impound, and "a city-contracted company towed his truck." *Id.* Like Ms. Horner, Mr. Long requested a hearing to contest the validity of the impound in Seattle Municipal Court. *Long*, 198 Wn.2d at 143. At the hearing, the court found that Mr. Long had committed the underlying traffic infraction (like in Ms. Horner's case), but it waived the fine associated with the infraction. *Id.* It also reduced Mr. Long's impound related fees, and it permitted Mr. Long to enter a payment plan to avoid a forced sale at a public auction as required by RCW 46.55.120(4). See *id.*

As Ms. Horner alleges in her complaint, Mr. Long argued on appeal from the municipal court's ruling that the City violated the Homestead Act because "his truck was under threat of a forced sale by public auction unless he agreed to the payment plan and was unlawfully attached under a possessory lien when the truck was towed." *Id.* at 151-52. The Washington Supreme Court disagreed, stating:

> Long's parking infraction gave rise to his debt. After contesting the infraction in municipal court, the magistrate imposed, and Long agreed to, a payment plan to reimburse the city for the impoundment costs. Seattle is Long's creditor to whom he owes a $547.12 debt. *At this point, however, there is no evidence that the city has attempted to collect on Long's debt.* Therefore, the homestead act's shield against attachment, execution, or forced sale is unnecessary because none of these actions has occurred.

*Long*, 198 Wn.2d at 155 (emphasis added).

Here, Plaintiff attempts to get around the inapplicability of the Homestead Act by alleging in

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 8
(2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

her complaint that the City attached her vehicle as "security for an impound debt,"[5] but the Court can, and should, reject this bare legal conclusion because there are no pleaded facts in the Complaint that plausibly suggest that the allegation is true.  As discussed, *supra*, an "attachment" happens when a creditor seizes property to secure a judgment or to be sold in satisfaction of a judgment – in other words, it is a seizure of property performed as a means to satisfy a judgment *that existed prior to the seizure*. The allegations of the Complaint, taken as true, do not plausibly suggest that the City impounded Plaintiff's vehicle to satisfy a previous judgment, nor do they suggest that a prior judgment even existed. The allegations of the Complaint state that impound of her vehicle *gave rise* to a debt that did not exist prior to impoundment. Thus, the impoundment of Ms. Horner's vehicle cannot be legally characterized as an attachment. *Long,* 198 Wn.2d at 152.

While it is true that when a vehicle is impounded by a tow operator, a debt is incurred by the vehicle owner (see RCW 46.55.115), attachment and execution are not applicable creditor actions in this context because those mechanisms involve the seizure of property, and a tow operator has already come into possession of a vehicle the moment the debt is incurred. Additionally, storage-related debt continues to increase while the vehicle is in the tow operator's possession. For this reason, under Washington law, debts related to the towing and storage of an impounded vehicle are recovered through the mechanism of a forced sale at public auction, the proceeds of which go towards satisfying the tow- and storage-related debts that have accrued up until that point. See RCW 46.55.130(1). While the Homestead Act protects homesteads against such forced sales, *the allegations of the Complaint do not plausibly suggest such a forced sale occurred in this matter.* Plaintiff challenged the impoundment of her vehicle in municipal court and prevailed, and by operation of law, *the City of*

---

[5] Dkt. # 1-2, p. 8.

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 9
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Seattle* – not Plaintiff – became liable for the towing and storage fees related to the impoundment of her vehicle. See RCW 46.55.120(2)(e).[6]

The allegations of the Complaint simply fail to suggest that Plaintiff's vehicle was ever subjected to a forced sale or any other creditor action covered by the Homestead Act. Instead of subjecting her homestead to a forced sale, the Complaint alleges that Lincoln Towing returned Ms. Horner's homestead to her possession voluntarily, and the City of Seattle was liable for the remaining debt. Based on the reasoning in *Long*, the Court should dismiss Ms. Horner's eighth cause of action.

**D. The City of Seattle is exempt from claims brought under the Consumer Protection Act as a matter of law.**

In 1969, the Washington Supreme Court noted that "[b]y its very terms" the Washington Consumer Protection Act ("CPA") applies only to "natural persons, corporations, trusts, unincorporated associations and partnerships." *Washington Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 77 Wn.2d 94, 98, 459 P.2d 633, 636 (1969) (citing RCW 19.86.010, which defines "person" as "natural persons, corporations, trusts, unincorporated associations and partnerships"). Based on this definition of "person" under the CPA, the Washington Supreme Court held that municipal corporations are exempt from its provisions: "[n]owhere does [the CPA's] language imply that municipal corporations or political subdivisions of the state are within the definition of persons and entities made subject to it." *Id.*

This holding has been recognized consistently in both state and federal courts (including this Court) for more than fifty years. See *Chamber of Commerce of United States v. City of Seattle*, 274 F. Supp. 3d 1155 (W.D. Wash. 2017), rev'd on other grounds, 890 F.3d 769 (9th Cir. 2018);

---

[6] "If the impoundment is determined to be in violation of this chapter, then the registered and legal owners of the vehicle or other item of personal property registered or titled with the department shall bear no impoundment, towing, or storage fees, and any security shall be returned or discharged as appropriate, and the person or agency who authorized the impoundment shall be liable for any towing, storage, or other impoundment fees permitted under this chapter."

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 10 (2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*Haberman v. Washington Pub. Power Supply Sys.,* 109 Wn.2d 107, 171, 744 P.2d 1032, 1072 (1987), amended, 109 Wn.2d 107, 750 P.2d 254 (1988); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 25 Wn.App. 741, 746-47, 525 P.3d 238 (2023). Nonetheless, Plaintiff brings her "ninth cause of action" against the City under the CPA. This claim fails as a matter of law and should be dismissed with prejudice. For the same reasons, the Court should dismiss Plaintiff's request for a permanent injunction under the CPA (RCW 19.86.090) (Plaintiff's "eleventh cause of action").

**E. Plaintiff's conversion claim against the City fails because the impoundment of her vehicle was authorized by law.**

Under Washington law, conversion "is the act of willfully interfering with any chattel, *without lawful justification*, whereby any person entitled thereto is deprived of the possession of it." *Brown ex rel. Richards v. Brown*, 157 Wn.App. 803, 817, 239 P.3d 602, 609 (2010) (citing *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn.App. 80, 83, 18 P.3d 1144 (2001); *Davenport v. Wash. Educ. Ass'n*, 147 Wn.App. 704, 722, 197 P.3d 686 (2008)) (emphasis added). Wrongful intent is not an element of conversion, and good faith is not a defense. *Paris Am. Corp. v. McCausland*, 52 Wn.App. 434, 443, 759 P.2d 1210 (1988). "Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action [in conversion]." *In re Marriage of Langham & Kolde*, 153 Wn.2d 553, 560, 106 P.3d 212, 216 (2005) (alteration in original). Rather, the key inquiry in whether the possessory interference was authorized by law. See *Judkins v. Sadler-Mac Neil*, 61 Wn.2d 1, 4, 376 P.2d 837, 838 (1962)[7] (citing *Poggi v. Scott*, 167 Cal. 372, 375, 139 P. 815, 816 (1914)).

In the City of Seattle, a parking enforcement officer is authorized by law to impound a vehicle

---

[7] In a claim of conversion, "the tort consists in the breach of what may be called an absolute duty; the act itself… is unlawful[.]"

**DEFENDANTS ROBERT STROZIER AND THE
CITY OF SEATTLE'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)** - 11
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

"parked and/or used in violation of any law, ordinance or regulation." Seattle Municipal Code (SMC)

§ 11.30.060.A. Impounds based on a violation of law must be preceded by at least 24 hours' notice,

which must be "securely attached to and conspicuously displayed on the vehicle[.]" *Id.* When an

impound is authorized, "a vehicle may be impounded either by an officer or authorized agent of the

Police Department or by a contractor for towing and storage acting at the request of an officer or

authorized agent of the Police Department[.]" SMC § 11.30.080.

Dismissal of Plaintiff's conversion claim against Officer Strozier and the City is appropriate

because she fails to bring forth any facts in her Complaint indicating that impoundment of her vehicle

was unauthorized by law when it was initiated. For instance, there are no factual allegations contained

in the Complaint that the City failed to properly notify Plaintiff of the impoundment as required by

SMC § 11.30.060, or that the impound was effectuated by an unauthorized person who lacked the

authority to impound under SMC § 11.30.080, or that the City lacked a lawful basis to impound her

vehicle as required by SMC § 11.30.060.A. Indeed, the only facts before the Court are that there *was*

a lawful basis to impound her vehicle: the Seattle Municipal Court found after an evidentiary hearing

that Ms. Horner had "committed" the infraction that was the basis for the impound. (See Dkt # 1-2,

Exhibit A.)

Plaintiff appears to rest her entire conversion claim on the factual assertion that the Seattle

Municipal Court ruled the impoundment of her vehicle to be "improper" due to a finding that Officer

Strozier failed to "consider reasonable alternatives" to the impound. (See Dkt. # 1-2, p. 6.) However,

this finding does not negate or foreclose a finding that the impound was nonetheless authorized by

law at its inception, and it does not automatically give rise to a conversion claim. Under Washington

law, an impound is valid under Article I, Section 7 of the Washington Constitution "if the driver

committed a traffic offense for which the legislature has expressly authorized impoundment" *and* the

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

impoundment is "reasonable under the circumstances[.]" *Long*, 198 Wn.2d at 156. Thus, for the purposes of Article 1, Section 7 of the Washington Constitution, the inquiry into whether an impound is authorized by law is separate from the inquiry into whether the impound was reasonable under the circumstances. See *id.* at 156-57.

At this stage the Court must take as true that the Municipal Court found the impoundment of Plaintiff's vehicle to be unreasonable under the circumstances due to its finding that Officer Strozier failed to consider reasonable alternatives to impoundment. However, *reasonableness is not an element of a common law conversion claim*. See *Judkins* 61 Wn.2d at 4. Rather, to state a claim for conversion in the context of an impoundment, a plaintiff must assert that the impoundment was unauthorized by law at its inception. See, e.g., *Potter,* 165 Wn.2d at 75 (conversion claim allowed to proceed where underlying impound policy was invalid); *Boss v. City of Spokane*, 63 Wn.2d 305, 307, 387 P.2d 67, 68 (1963) (conversion claim permitted due to a lack of probable cause that the underlying infraction was committed); *Estate of Rogers by & through Cullen v. State*, 2017 WL 4512376 at 5, 200 Wn.App. 1066  (2017) (conversion claim hinged on whether impound was authorized by statute); *U4IK Gardens, LLP v. State*, 2021 WL 3057064 at 5, 18 Wn.App.2d 1029 (2021) (conversion claim denied because the seizure of property was authorized by statute).

Here, Plaintiff fails to state a claim for conversion against Officer Strozier and the City of Seattle because the allegations of the Complaint do not plausibly suggest that the impoundment of her vehicle was "without lawful justification," a necessary element of a conversion claim. *Brown ex rel. Richards*, 157 Wn.App. at 817. Indeed, all evidence is to the contrary: the Seattle Municipal Court found that Strozier had a lawful justification to initiate the impound due to Ms. Horner having committed a traffic infraction for which she had proper notice. Therefore, Plaintiff's conversion claim is implausible on its face and should be dismissed.

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 13 (2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### F. Under *Monell*, Plaintiff fails to state any claim against the City based on alleged deprivations of federal constitutional rights.

Plaintiff brings several claims against the City based on alleged violations of the United States Constitution, claiming the City violated the Fourth Amendment (second and third causes of action), the Eighth Amendment (fifth cause of action), and the Fourteenth Amendment (seventh cause of action). Although it remains unstated in Plaintiff's complaint that these claims are brought under 42 U.S.C. § 1983[8] ("§ 1983"), the Court should interpret these claims as being brought under § 1983 because it is "the exclusive remedy for federally-guaranteed rights when suit is brought against a state actor[,]" such as the City. See *Roberson v. City of Goldsboro*, 564 F. Supp. 2d 526, 529 (E.D.N.C. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735, 109 S.Ct. 2702 (1989)).

Local governments "are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). As a result, Plaintiff's federal claims against the City are confined to the *Monell*[9] cause of action. See, e.g., *Collins v. City of Harker Heights*, 503 U.S. 115, 122, 112 S. Ct. 1061, 1067, 117 L. Ed. 2d 261 (1992) ("[t]he city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ("[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible"). To prevail on a *Monell* claim, Plaintiff "must prove that (1) he [or she] was deprived

---

[8] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C.A. § 1983 (West).

[9] *Monell v. Department of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018 (1978).

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 14
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference of [Plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

Plaintiff's *Monell* claims against the City fail for two reasons: (1) she has not asserted sufficient facts indicating any constitutional violation occurred, and (2) even if she did, she has failed to assert facts indicating the violation was pursuant to an unconstitutional policy of the City that was "the moving force" behind the violation.

### 1. *Plaintiff fails to adequately allege a violation of the Fourth Amendment.*

The impoundment of a vehicle is a seizure under the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). A seizure conducted without a warrant "is per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir.2001) (internal quotations and citations omitted). As warrantless seizures, vehicle impounds are evaluated by federal courts under the "community caretaking" exception to the warrant requirement. See *South Dokota v. Opperman*, 428 U.S. 364, 368-69, 96 S. Ct. 3092 (1976). In their "community caretaking" function, police officers may impound vehicles that "jeopardize public safety and the efficient movement of vehicular traffic." *Id*. Inquiries into whether a vehicle impound is valid under the community caretaking doctrine should "center upon the reasonableness" of the government action at issue. *Id.* at 471. "Under the community caretaking exception, police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." *United States v. Cervantes*, 703 F.3d 1135, 1140–41 (9th Cir. 2012) (quoting *Miranda*, 429 F.3d at 864) (quotations omitted).

In the context of impoundment, a community caretaking purpose exists if a vehicle is "parked illegally, pose[s] a safety hazard, or is vulnerable to vandalism or theft." See *Cervantes*, 703 F.3d at

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 15 (2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1141. Similarly, an impoundment is proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, or if it is necessary to remove the vehicle from an exposed or public location. *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005) (citing *United States v. Gutierrez,* 995 F.2d 169, 171 (9th Cir.1993)). The violation of a traffic-related regulation "justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation." <u>Miranda</u>, 429 F.3d at 865. In any event, "[t]he reasonableness of any particular government activity *does not*… turn on the existence of alternative 'less intrusive' means." *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S. Ct. 738, 742, 93 L. Ed. 2d 739 (1987) (quoting *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605 (1983) ("[T]he real question is not what 'could have been achieved,' but whether the Fourth Amendment requires such steps")).

Here, Plaintiff's legal theory that the City violated the Fourth Amendment appears to rely entirely upon the fact that the Seattle Municipal Court found there were "reasonable alternatives" to impoundment. However, this finding is inapposite to a Fourth Amendment analysis. Washington and federal courts have long recognized that Article I, Section 7 of the Washington Constitution provides broader protection than the Fourth Amendment — its federal counterpart. See, e.g., *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 803 (9th Cir. 2001) ("[t]he Washington Supreme Court has made it emphatically clear that [Wash.] Const. art. I, § 7 provides protections for the citizens of Washington which are qualitatively different from, and in some cases broader than those provided by the Fourth Amendment"). While the absence of a "reasonable alternative" to impoundment is required for an impound to be valid under the Washington Constitution, "reasonable alternatives" to impoundment are not required under the Fourth Amendment. Plaintiff's claim is valid only if she pleads sufficient facts to plausibly suggest the "unreasonableness" of the impound, and she wholly

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 16 (2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

fails to do so.

The allegations of the Complaint, taken as true, are that Plaintiff's vehicle was parked on a public street in violation of the law, and impoundment was authorized by local ordinance. Her vehicle could not be moved because it was out of fuel. While REACH had allegedly arranged for a third party to tow Plaintiff's vehicle away from the location, no such third party had appeared at the time Officer Strozier arrived to address the parking violation, and the Complaint does not plausibly suggest that the third party's arrival was imminent or would occur at any specific time in the future. Thus, Officer Strozier's options were limited to either impounding Ms. Horner's vehicle or walking away and ignoring the violation. His decision to do the former was reasonable, because the vehicle was left in the public right of way in violation of local law.

Further, the suggestion in Plaintiff's complaint that Officer Strozier had the option of authorizing a tow of Ms. Horner's vehicle to a fueling station is legally incorrect. Such an action would have been unlawful. Local law authorizes law enforcement to impound a vehicle whenever it is parked in violation of any law, and "impound" means "to take and hold a vehicle in legal custody." RCW 46.55.010(4). Neither Officer Strozier nor Lincoln Towing was authorized to have Ms. Horner's vehicle towed anywhere except a tow lot to be held there in legal custody.

### 2. *The impoundment of Plaintiff's vehicle met the procedural due process requirements of the Fourteenth Amendment.*

Although Plaintiff readily concedes that she received pre-deprivation notice of impoundment and prevailed at a post-deprivation hearing to challenge the impoundment of her vehicle, she now argues that the City "violated [her] Fourteenth Amendment right to procedural due process by denying her a prompt post-seizure hearing." (Dkt. # 1-2, p. 9.)

To satisfy the requirements of procedural due process, a deprivation of property "must be

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 17
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

preceded by notice and opportunity for hearing appropriate to the nature of the case." *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1236 (9th Cir. 2009) (quoting *In re Yochum*, 89 F.3d 661, 672 (9th Cir. 1996)). The requirements of due process guarantee "no particular form of procedure; [they] protect[] substantial rights." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895 (1974). In the context of a vehicle impound, "the relevant question for due process purposes" is "whether the City… provided the level of notice required whenever the government alters substantive rights through enactment of rules of general applicability." *Lone Star,* 584 F.3d at 1237 (quoting *United States v. Locke,* 471 U.S. 85, 108, 105 S. Ct. 1785 (1985) (internal quotations omitted). A local government, like the City, generally provides this level of notice "simply by enacting the statute, publishing it, and… affording those within the statute's reach a reasonable opportunity to familiarize themselves with the general requirements imposed and to comply with those requirements." *Locke,* 471 U.S. at 108.  However, with some exceptions, due process "require[s] that notice generally be given before the government may seize property." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir.2008).

Here, Plaintiff concedes that she received actual notice that the City intended to impound her vehicle at least two weeks before the eventual impoundment. Even if the alleged delay in receiving a post-deprivation hearing constitutes a violation of due process, Plaintiff fails to plead any facts that plausibly suggest the City or any of its employees were responsible for the delay. Further, outside a single phrase in her complaint asserting that Lincoln Towing is the City's "agent,"[10] Plaintiff provides no legal basis for the implied notion that the City should be responsible for any actions Defendant Lincoln Towing took towards delaying her post-deprivation hearing.

---

[10] Dkt. # 1-2, p. 2.

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 18
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Finally, it should be noted that Plaintiff failed to demonstrate how any delay in receiving a post-deprivation hearing was prejudicial to her property interests. The Complaint alleges that Lincoln Towing voluntarily returned Plaintiff's vehicle over five months prior to her hearing. Furthermore, the Complaint alleges she prevailed at the hearing. The due process she was provided in fact allowed her to secure the return of her vehicle and avoid any liability for the towing and storage costs associated with the impoundment of her vehicle. Whatever process was provided, it was clearly adequate under the Fourteenth Amendment: Plaintiff's substantive rights in her homestead were preserved.

> **3.  *The Excessive Fines Clause is inapplicable as a matter of law because there is no evidence Plaintiff was required to pay the fine alleged to be excessive to the City.***

The Eight Amendment to the U.S. Constitution prohibits "cruel and unusual punishments," and "excessive fines." Plaintiff brings her fifth cause of action against the City under the latter clause, claiming the City violated her "right to be free from excessive fines by impounding and withholding her home." (Dkt. #1-2, p. 8.) However, "[t]he excessive fines clause prohibits the *extraction of payment* as a punishment for some offense that would deprive a person of his or her livelihood." *Long,* 198 Wn.2d at 176 (citing *U.S. v. Bajakajian,* 524 U.S. 321, 335, 118 S.Ct. 2028 (1998); *Timbs v. Indiana,* 586 U.S. 146, 139 S.Ct. 682, 688 (2019)) (emphasis added); see also *Austin v. United States,* 509 U.S. 602, 609-10, 113 S.Ct. 2801 (1993) ("[t]he Excessive Fines Clause limits the government's power to extract payments"). Further, under an excessive fines analysis, the term "fine" is "understood to mean a payment *to a sovereign* as punishment for some offense." *Browning-Ferris Industries of Vt., Inc., v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S. Ct. 2909 (1989).

Here, Plaintiff's claim fails to identify any payment the City has "extracted" from her. The Washington Supreme Court's decision in *Long,* although not binding on this Court, is instructive on

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 19
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

this point.[11] First, the court recognized that in the context of a vehicle impound, the only penalties involved for the purpose of an excessive fines analysis are (1) the fine related to the underlying infraction, and (2) the storage and impound fees. *Long*, 198 Wn.2d at 173. The court deemed the impound of Mr. Long's vehicle to be a "fine" because the City had entered into a payment agreement with Mr. Long to cover the towing and storage costs associated with the impound of his vehicle. *Id.* In other words, payment was extracted by the City ("a sovereign") as punishment for an offense.

Critically, Plaintiff does not (and cannot) plead that the City has extracted any payment related to the towing and storage fees in this matter. The storage and impound fees associated with the impound of her vehicle were assessed by the entity that towed and stored her vehicle: Defendant Lincoln Towing. The Plaintiff does not allege she entered into a payment agreement with the City, and there are no facts that plausibly suggest the City extracted any other form of payment from Plaintiff related to the towing and storage of her vehicle by Lincoln Towing. In fact, the allegations of the Complaint are that no payment related to towing and storage was extracted from her whatsoever – when Plaintiff prevailed at her impound hearing, she was no longer liable for the storage and towing fees, and the City assumed liability. See RCW 46.55.120(2)(e).[12] The excessive fines clause is not implicated here.

### 4. *Plaintiff's federal claims against the City ultimately fail because there is no evidence the impound of her vehicle was the result of a City policy or practice.*

As mentioned above, to adequately state a claim against the City under *Monell*, Plaintiff must plead that "(1) [s]he was deprived of a constitutional right; (2) the municipality had a policy; (3) the

---

[11] The Washington Supreme Court interprets the excessive fines clause in the Washington State Constitution as being "coextensive" with its federal counterpart. *Long,* 198 Wn.2d at 159.

[12] "If the impoundment is determined to be in violation of this chapter, then the registered and legal owners of the vehicle or other item of personal property registered or titled with the department shall bear no impoundment, towing, or storage fees, and any security shall be returned or discharged as appropriate, and the person or agency who authorized the impoundment shall be liable for any towing, storage, or other impoundment fees permitted under this chapter."

DEFENDANTS ROBERT STROZIER AND THE
CITY OF SEATTLE'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6) - 20
(2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

policy amounted to deliberate indifference of [Plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." See *Lockett,* 977 F.3d at 741. To withstand a motion to dismiss under FRCP 12(b)(6), a *Monell* claim must be based at minimum on an allegation "that the individual officers' conduct conformed to official policy, custom, or practice." See *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 624 (9th Cir.) (citing *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir.1986)).

Plaintiff has simply failed to plead the second, third, and fourth elements of her *Monell* claim, as she makes no allegation that Officer Strozier's conduct was done pursuant to policy, custom or practice of the City. Thus, the Court should dismiss all causes of action against the City based on alleged violation of federal constitutional rights because Plaintiff has failed state any claim for which relief may be granted.

### G. The Federal Constitutional claims against Officer Strozier are barred by the doctrine of qualified immunity as a matter of law.

In her complaint, Plaintiff brings claims under the Fourth and Eighth Amendments of the U.S Constitution against Officer Strozier. These claims should be dismissed under the doctrine of qualified immunity as a matter of law. Under that doctrine, law enforcement officers are entitled immunity from suits for damages "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 580 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)); see also *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534 (1991).

For a legal principle to be "clearly established" for the purpose of assessing an assertion of qualified immunity, it must have a "clear foundation in then-existing precedent." *Wesby*, 502 U.S. at

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 21 (2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

63. As the Supreme Court has stated:

> The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority[.] It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know. The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* (internal quotations and citation omitted). In this way, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 62–63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Here, Officer Strozier is entitled to immunity from the federal claims Plaintiff brings against him because, as argued above, there are insufficient facts to plausibly suggest that he violated a federal right protected by the Fourth or Eighth Amendments.

Further, even if the Court finds a *prima facie* violation of the Fourth or Eight Amendment contained in Plaintiff's complaint, such a finding would not represent a "clearly established" standard of law that every reasonable officer would know. Indeed, federal precedent suggests that the impoundment of a vehicle found to be parked on a public street in violation of a rule of general applicability is lawful. See, e.g., *Cervantes*, 703 F.3d at 1141 (impounding illegally parked vehicle serves community caretaking function); *Miranda*, 429 F.3d at 865 (impounding vehicle left exposed in a public location is proper under the community caretaking doctrine). Plaintiff can point to no "controlling authority" or "robust consensus of cases of persuasive authority" that clearly establishes the impound of Plaintiff's vehicle, which was authorized by law, was nonetheless unlawful under the Fourth or Eighth Amendment. Therefore, Officer Strozier is immune from suit on these claims as matter of law.

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 22
(2:24-cv-01488-RSL)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**H. The City had no legal duty to prevent a third party from intentionally harming Plaintiff's vehicle while in it was in Lincoln Towing's possession.**

In Plaintiff's "tenth cause of action," she claims that after her vehicle was towed by Defendant Lincoln Towing, the City nonetheless inexplicably maintained "sole possession" of her vehicle and is liable to Plaintiff for damages for "negligently fail[ing] to exercise reasonable care to protect [her] property from theft and damage[.]" (Dkt. # 1-2, p. 10.) Under Washington law, Plaintiff's negligence claim against the City may proceed only if her complaint adequately establishes (1) a duty of care was owed to her by the City; (2) there was a breach of that duty; (3) that breach was the cause of her harm; and (4) she suffered injury as a result. *Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002). A municipality is held to a general duty of care, that of a "reasonable person under the circumstances." *Id.* (Citing DAN B. DOBBS, THE LAW OF TORTS § 228, at 580 (2000)). "Whether a municipality owes a duty in a particular situation is a question of law[.]" *Id.* (Citing *Hansen v. Friend*, 118 Wash.2d 476, 479, 824 P.2d 483 (1992)).

Under Washington law, "there is no duty to prevent a third party from intentionally harming another unless a 'special relationship exists between the defendant and either the third party or the foreseeable victim." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420 (1997) (internal quotations omitted) (quoting *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 227, 802 P.2d 1360 (1991)); accord *Folsom v. Burger King*, 135 Wn.2d 658, 674–75, 958 P.2d 301 (1998) (absent a special relationship "no legal duty to come to the aid of a stranger exists").

Here, Plaintiff's complaint contains no facts that would allow the Court to determine the City owed a duty to Plaintiff as a matter of law. The Complaint fails to establish any special relationship between the City and Plaintiff, or as between the City any third party responsible for allegedly stealing or damaging Plaintiff's property. Instead, Plaintiff makes the incoherent assertion that both the City

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 23
(2:24-cv-01488-RSL)

1    and Lincoln Towing each had "sole possession" of her vehicle. In reality, after Officer Strozier

2    authorized the vehicle for impoundment, Defendant Lincoln Towing came into "sole possession" of

3    Plaintiff's vehicle: Plaintiff's vehicle was towed from a public street by Lincoln Towing (not the

4    City) to a storage lot owned and operated by Lincoln Towing (not the City).

5          Plaintiff alleges her property was stolen or damaged after Lincoln Towing took possession of

6    her vehicle and towed it to Lincoln's impound lot. (See Dkt. #1-2, p. 4.) At that time, Lincoln Towing

7    maintained sole possession and control over the vehicle, as evidenced by the alleged fact that Plaintiff

8    dealt exclusively with Lincoln Towing in securing its return to her possession. (Dkt. #1-2, p. 4-5.)

9    Plaintiff's complaint fails to allege or otherwise plausibly suggest that the City had a legal duty under

10   the circumstances to prevent any alleged damage to her property allegedly caused by nonfeasance on

11   the part of Lincoln Towing. Therefore, Plaintiff's claim of negligence against the City should be

12   dismissed because the Complaint fails to put forward any facts or legal theories that would allow the

13   Court to find the City owed Plaintiff a duty to prevent a third party from intentionally harming her

14   property while it was in the sole possession of Defendant Lincoln Towing.

15                              **V.        CONCLUSION**

16         For the foregoing reasons, this Court should dismiss Plaintiff's complaint as against the City

17   and Officer Strozier in its entirety. Plaintiff's conclusory allegations, even taken as true, do not

18   establish that she is entitled to relief. The legal contentions in the Complaint misinterpret or

19   misapply applicable law. The viability of Plaintiff's allegations will not be strengthened through

20   discovery or amendment of Plaintiff's complaint. Consequently, the City and Officer Strozier are

21   entitled to dismissal of Plaintiff's complaint with prejudice.

22   //

23

**DEFENDANTS ROBERT STROZIER AND THE
CITY OF SEATTLE'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)** - 24
(2:24-cv-01488-RSL)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

I certify that this memorandum contains 7,950 words, in compliance with the Local Civil Rules.

DATED this 26ᵗʰ day of November, 2024.

ANN DAVISON
Seattle City Attorney

By:  */s/Joseph Everett*
Joseph Everett, WSBA# 38248
Dallas LePierre, WSBA# 47391
Carson Canonie, WSBA# 62464
Assistant City Attorneys

E-mail:  Joseph.Everett@seattle.gov
E-Mail:  Dallas.LePierre@seattle.gov
E-Mail:  Carson.Canonie@seattle.gov

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone:  (206) 684-8200

*Attorneys for Defendants City of Seattle and Robert Strozier*

**DEFENDANTS ROBERT STROZIER AND THE CITY OF SEATTLE'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** - 25
(2:24-cv-01488-RSL)

**CERTIFICATE OF SERVICE**

I certify that on the 26th day of November, 2024, I caused a true and correct copy of this document to be served on the following in the manner indicated below:

| | |
|---|---|
| James E. Lobsenz WSBA #8787<br>CARNEY BADLEY SPELLMAN, P.S.<br>701 Fifth Avenue, Suite 3600<br>Seattle, WA 98104-7010<br>*Attorney for Plaintiff* | (X)  via CM/ECF<br>lobsenz@carneylaw.com |
| Fadi Assaf, WSBA #13658<br>NORTHWEST JUSTICE PROJECT<br>401 2nd Avenue S. Suite 407<br>Seattle, WA 98104<br>*Attorney for Plaintiff* | (X)  via CM/ECF<br>fadi.assaf@nwjustice.org<br>Louise.akerblom@nwjustice.org<br>groth@carneylaw.com |
| Daniel P. Mallove, WSBA #13158<br>Eric Cascio, WSBA #52941<br>LAW OFC OF DANIEL P MALLOVE PLLC<br>2003 Western Avenue, Suite 400<br>Seattle, WA 98121 | (X)  via CM/ECF<br>dmallove@dpmlaw.com<br>ecascio@dpmlaw.com<br>mrussell@dpmlaw.com |

Dated this 26th day of November, 2024, at Seattle, Washington

_/s/ Laura Sanabria_____
Laura Sanabria, Legal Assistant

**DEFENDANTS ROBERT STROZIER AND THE
CITY OF SEATTLE'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)** - 26
(2:24-cv-01488-RSL)