1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHANEL HORNER,

              Plaintiff,

    v.

CITY OF SEATTLE; OFFICER ROBERT
STROZIER; and LINCOLN TOWING
ENTERPRISES, INC.,

           Defendants.

NO. 2:24-cv-01488-RSL

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

## I.      INTRODUCTION

At the direction of Seattle police officer Robert Strozier, Lincoln Towing Enterprises impounded the bus that plaintiff Chanel Horner was living in, and then kept it for nearly two months before releasing it to her. The City admits that conversion "is the act of willfully interfering with any chattel *without lawful justification,* whereby any person entitled thereto is deprived of the possession of it." *Dkt.* 17, at 11:8-9 (italics added by City), quoting *Brown ex rel Richards v. Brown*, 157 Wn. App. 803, 817, 239 P.3d 602 (2010). But the City simply ignores the fact that a Seattle Municipal Court judge expressly ruled that the impound of Horner's bus was "improper *and unlawful*."

The City acknowledges that a complaint survives a motion to dismiss if, when its allegations are "accepted as true" as they must be, it states a claim that is plausible on its face. *Dkt.* 17, at 4:15-17, citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Despite this

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

acknowledgment the City repeatedly implies that the allegations of the complaint are not true.[1] Moreover, Horner's complaint explicitly alleged that the municipal court judge found "that the impound was improper *and unlawful*." Dkt. 2-1, ¶51 (italics added).  Despite the fact that the City is in possession of transcripts of the audio recordings of the entire impound hearing,[2] including the judge's ruling, which show that the judge explicitly made a finding of "unlawfulness," the City wholly ignores this finding and argues to this Court that "the allegations of the Complaint do not plausibly suggest that the impoundment of her vehicle was 'without lawful justification,' a necessary element of a conversion claim." *Dkt.* 17, 13:17-19.

The municipal court judge distinguished between Officer Strozier's issuance of a citation for a parking infraction, and his decision to impound the bus.  The Court explicitly stated "I am finding that the impound was "improper and unlawful," and then the Clerk asked "what about the parking violation? She stated, "I do find that that infraction is committed," and *Dkt* 2-1, Exhibit A and *Trans.* E-9, E-10. Glossing over this distinction, the City first states in its brief, "[t]he municipal court found that Officer Strozier had a valid basis to impound Ms. Horner's bus (i.e., it found the infraction had been "committed" by Ms. Horner) …." *Dkt.* 17, 3:11-12.  This is not accurate.  The court never used the word "valid" at all.  While one could characterize the Officer's issuance of the parking citation as a "valid" act,  that was the *only* action that the Officer took that could be characterized in that way.  The City *admits* that the court "otherwise agreed with Ms. Horner, finding that the impound itself was improper." *Dkt.* 17, 3:12-13.  After inaccurately stating that the judge found "a valid basis to impound" the bus,

---

[1] For example, even though *every* statement made in the complaint is just an "allegation," the City singles out a few paragraphs (¶¶ 26, 28, 32, 42-44) and comments that these paragraphs contain Ms. Horner's "claims" that she made certain requests that Officer Strozier "allegedly" denied, and Horner's "claims" that several of her possessions were missing when she finally got her bus back.  *See, e.g.*, *Dkt.* 17 at pp. 2-3.

[2] These transcripts are attached to the Declaration of Fadi Assaf and were provided to defendants in plaintiff's initial disclosures. The judge found that the impound was "improper and unlawful." Dkt. 2-1, ¶51, *Trans.* E-9.

the City goes on to treat the "validity" and the "propriety" of an impound as if they were two different things, suggesting that the impound was simultaneously *both* valid and improper, and studiously avoids mentioning the fact that the judge expressly stated that she was finding the impound to be "unlawful."

On the one hand, the City points out that "the municipal court issued no written factual findings or conclusions of law," suggesting that no one really knows what the judge was thinking when she found that the impound was "improper." The City uses quotation marks when it refers to the judge's ruling that the impound was "improper" because Strozier "did not consider reasonable alternatives" to the impound and her finding that a reasonable alternative was "actually available." *Dkt.* 17, 3:15-17. Thus, the City ignores the transcript when it misrepresents the judge's ruling that a parking infraction was committed by characterizing that statement as a finding that the impound was "valid" (a word the judge never used), and then ignores the transcript a second time when it shows that the judge explicitly stated that the impound was "unlawful."

## II.    HORNER'S PARTIAL SUMMARY JUDGMENT MOTION FOR SIMULTANEOUS CONSIDERATION.

With respect to the City's 12(b)(6) motion, this Court can take judicial notice of all the records and transcripts from the previous municipal court impound hearing. *In re American Continental Corp.*, 102 F.3d 1524, 1537 (9th Cir. 1996); *In re Washington Mutual,* 259 F.R.D. 490, 495 (W.D. Wash. 2009). Consideration of those transcripts does *not* convert the motion to dismiss into a summary judgment motion. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds, *Astoria Federal Savings v. Solimino*, 501 U.S. 104 (1991).

Since virtually all of the material facts pertinent to Horner's claims for conversion, and for deprivation of Fourth, Eighth, and Fourteenth Amendment procedural due process rights are undisputed, in addition to this brief in opposition to the City's motion to dismiss, Horner is

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 3
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

also filing a motion for partial summary judgment on these claims.[3]  This Court may wish to consider the City's dismissal motion and Horner's partial summary judgment motion in separate stages, or as the Court did in *Price v. Seattle,* 2005 WL 1528957 (W.D.Wash.), it may wish to consider them simultaneously.

### III.    STATEMENT OF FACTS

**A.    September 15 impound of Horner's bus.**

In September of 2022, Chanel Horner was unemployed, financially destitute, unhoused, and living in Seattle in her bus, which ran on natural gas only.  *Dkt.* 2-1, ¶¶14-18. All of her worldly possessions were in the bus. *Id., ¶*19. In late August or early September, Horner learned that on September 15 the City intended to do a sweep of all vehicles parked on the 5000 block of Colorado Avenue South, where she was living. *Id.,* ¶¶20, 22. The City refers to such sweeps as "remediations" or as "geo cleans." *Id.*, ¶21; *Trans.* A-5. Horner intended to remove her bus from that block the day before the scheduled September 15 sweep. *Dkt.* 2-1, ¶23.

However, on the evening of September 14, Horner discovered that because the gas cap had not been tightened all the compressed natural gas inside the gas tank had evaporated. *Id.*, ¶24. Around 6:00 a.m. on September 15, Horner contacted Evergreen Services REACH (hereafter "REACH"), an organization that helps the unhoused, and asked for help. *Id.*, ¶25. REACH agreed to hire a private towing company to come and tow Horner's bus to a compressed natural gas station located a few blocks away in South Park. *Id.*, ¶26.

James Shepard, the Seattle Public Utilities employee in charge of all street remediations, arrived at the site about 8 a.m. and told Horner and other people living on that block in vehicles, that they had to move. *Trans.* A-5, B-7.  Horner told Shepard that her bus could not be driven because it was out of natural gas, that she had arranged for a private tow truck to come and tow

---

[3] As noted in that separate motion, the City obviously anticipated Horner's collateral estoppel argument.  The municipal court's determination that the impound was "unlawful" cannot be relitigated in this court.  See *Ernst v. Chicago*, 63 F.Supp.2d 908 (N.D. Ill. 1999)(car owner's federal claim challenging impound precluded by prior state court judgment).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 4
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

her to a natural gas station, and that she needed some time. *Dkt.* 2-1, ¶28; *Trans.* B-10. A REACH representative named Dawn Shepard, who was Mr. James Shepard's wife, also contacted James Shepard and confirmed that REACH had made arrangements for a private tow truck to come and tow Horner's bus. *Dkt.* 2-1, ¶30. But James Shepard stated that "[i]t was too late [for that.] That ship had sailed." *Trans.* B-13. James Shepard told Dawn Shepard that a private tow "was not an option and that the City was going to proceed with the impound of [Horner's] bus." *Dkt.* 2-1, ¶31. Months later, at the impound hearing, James Shepard confirmed that normally alternatives to a city impound, such as a private tow, would not be considered "[a]fter 9 a.m." *Trans.* B-25. But when asked if it was "a city policy that after 9 a.m. you do not allow any reasonable alternatives to impound," he replied, "I don't believe it's a city policy" and admitted that he was "[n]ot sure whose rule it was." *Id.* Although Shepard referred to it as a "rule," he admitted that sometimes "[w]e will allow private tows after 9 a.m. It depends on the situation. There has been both." *Id.* at 26.

Horner also told Officer Robert Strozier that she was unhoused and living in the bus; that it could not be driven because it had run out of natural gas; and that she had arranged for a private tow truck to come and tow her to a natural gas station. Dkt. 2-1, ¶¶28-29. Like James Shepard, Officer Strozier said he told Horner that "9 o'clock is the deadline." *Trans.* C-17. Strozier told Horner that a city tow truck was on the way and that if it got there before the private tow truck, the city truck was going to tow her bus away. *Dkt.* 2-1, ¶29.

Strozier later testified that he was told two things. First, he "was told that they had a tow truck coming, and then [he was told] that they didn't because they couldn't afford it." *Trans.* C-20. Strozier was unable to identify the person who allegedly told him that the funding for the private tow had fallen through. *Id.* ("I don't know who it was specifically. … I do not remember who told me that."). Strozier also testified that *after* someone allegedly told him that the funding had fallen through, he told Horner "[w]e have our tow truck coming. You have until

it gets here. *Whichever tow truck gets here first*, if you have a private tow coming, that's fine."
*Id.* (italics added).

When the Lincoln truck arrived, Horner asked Strozier if he could simply wait for the private tow truck to arrive, or, if he could not do that, if he would direct Lincoln Towing to tow the bus to the nearby compressed gas station, and Strozier refused both requests. *Dkt.* 2-1, ¶32. At Strozier's direction, Lincoln then impounded Horner's bus. *Id.,* ¶32. Strozier testified that Lincoln towed Horner's bus away around 12:30 p.m. *Trans.* C-6.

Later that day, Horner visited three Lincoln Towing impound lots in an attempt to get her bus back. *Dkt.* 2-1, ¶34. First she went to a Lincoln Towing lot at 8425 1st Avenue South but her bus was not there. *Id.,* ¶35. Horner asked how she could request a hearing to contest the impound and was told by a Lincoln employee that it was too late in the day to do that, and the employee did not know how she could make a hearing request. *Id.,* ¶36. Horner then went to a second Lincoln Towing impound lot located at 3460 1st Avenue South. *Id.,* ¶37. There, a Lincoln Towing employee told her that she did not have a fax machine and could not submit a request for an expedited hearing. *Id.* Still later that day, Horner went to a third Lincoln impound lot at 12220 Aurora Avenue North and there she found her bus. *Id.,* ¶38. There she was told that she could not make any request for an impound hearing because was not the registered owner of the vehicle. *Id.*

**B.    Subsequent release of bus to Horner roughly 2 months later.**

On November 9, 2022, at the request of Horner's attorney, Lincoln agreed to release the bus to Horner, and she was able to get it back. *Id.,* ¶39. With the assistance of REACH, Horner arranged for a private towing company to tow the bus from Lincoln's impound lot to a gas station in the South Park area of Seattle that sold compressed gas. *Id.,* ¶40. There she obtained compressed gas and was able to drive the vehicle again. *Id.* When the bus was returned to her, Horner discovered that many items of her property had been stolen or were missing, including

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 6
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

the cremated ashes of her deceased father. *Id.,* ¶¶41-44. She also discovered that the bus had been damaged. *Id.*, ¶¶45-47.

**C.    Municipal Court ruling that impound was improper.**

Contrary to the express language of RCW 46.55.120(1)(a), the impound hearing statute, the City and Lincoln Towing insisted that because Horner was not the registered owner, she was not entitled to any judicial hearing to review the lawfulness of the seizure and impound of her bus. However, Horner appealed the denial of her request for a hearing and eventually succeeded in obtaining an impound hearing in Seattle Municipal Court four months after her bus had been released to her. *Trans*. A-2. Horner sought the hearing in order to contest the validity of the impound so that she could avoid paying any financial charges for the costs of towing and storage that Lincoln Towing and City said she still had to pay.

On April 11, 2023, an impound hearing was held in Seattle Municipal Court. At the conclusion of the hearing, the judge ruled that the impound had been "improper." *Dkt*. 2-1, Exhibit A.

Citing *State v. Villela*, 194 Wn.2d 451, 450 P.3d 170 (2019), the Court identified the key issue as "whether the officers did consider reasonable alternatives." *Trans*. E-6. The Court also recognized that there was a witness credibility issue that required her to resolve a conflict between Officer Strozier's testimony on the one hand, and the testimony of Dawn Shepard and Chanel Horner on the other. *Trans*. E-6-7.

> We've got … ***Ms. Shepard who testified indicating that even though she presented a reasonable alternative, i.e., they were going to pay $1,500, I believe, to arrange for a private tow company to remove the vehicle and transport it to a gas station.*** She was told that that was no longer an option. And this was at 10 a.m. I believe 10:30 a.m. roughly around that time. You know, early on enough in the sweep.

*Trans*. E-7 (emphasis added).

On the other hand, the Court noted that

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 7
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

> ***Officer Strozier actually indicated somebody,*** he wasn't able to tell me who, or the parties who, accurately in testimony ***told him that the financing fell through.***

*Id.*

The Court decided that Officer Strozier's testimony was "not accurate":

> ***We hear from Ms. Shepard, that that's not the case that the financing was ready to go, they'd gotten authorization from their original outreach organization that pays for that,*** but also that if that fell through, they actually had an alternative means to procure funding. ***So I take what Officer Strozier says with respect to the funding falling through with a little bit of a grain of salt given that that was just not accurate,*** according to Ms. Shepard, who was in direct communication with the individuals financing.

*Trans*. E-7 (emphasis added).

The Court also found that even though Dawn Shepard "did contact a tow company," and even though that "tow company was ready to be deployed upon [a] moment's notice," James Shepard and Officer Strozier told her that they would not wait for that privately arranged tow truck to arrive: "[A]ccording to Ms. Shepard's testimony is [sic] that they were not going to consider the [private] tow." *Trans.* E-8.

Finally, the Court found that if Mr. Shepard and Officer Strozier had just agreed to wait for it, the private tow truck would have arrived by approximately 12:30 p.m., roughly two hours before the end of Strozier's regular shift at 2:30, and thus Strozier would never have had to work past shift without overtime pay:

> [S]he [Ms. Dawn Shepard] … told Mr. Shepard this information. And this was communicated to him, according to Ms. Shepard at 10:30. She indicated it would take roughly two, two hours to get there. And I have information here from Officer Strozier that his -- that he was not authorized for overtime, but that his shift ended at 230, not noon.

> And so I also have conflicting information, I suppose as to when … the remediation actually was concluded. I think a couple people testified differently to that…. ***The most reliable information I have is that at 10:30, it was communicated that a tow would be there within the next couple of hours. And the officers were authorized to be there at least until 2:30.***

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 8
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

> *I don't believe that Officer Strozier* the impounding officer on, or the parking enforcement officer that was on site, ***considered the reasonable alternative that was presented*** for Ms.-- that Ms. Horner had arranged a tow to be to move her vehicle away from this area.

*Trans.* E-8-9 (emphasis added).

Thus, the Court found that there was a reasonable alternative: Officer Strozier could have simply waited for the private tow truck to arrive and allowed it to tow Horner's bus away, instead of having Lincoln impound it.  Because Officer Strozier did not consider that alternative, the Court ruled that the impound was unlawful:

> ***So*** I don't think, ***given that I'm finding*** that the impound was [–] ***that the officer*** did not find the [–] or ***did not consider reasonable alternatives, seeing as one was actually available as well***. … ***I am finding that the impound was improper and unlawful***. So I believe that concludes my findings. …

*Trans.,* E-9 (emphasis added).

Because the Court found that the impound was improper, Horner did not have any obligation to pay for the costs of the tow and the impound. Although the impound was improper, the Court held that Horner did commit a parking infraction for which the standard fine was $47, but given Horner's meager financial resources, the Court waived the entire fine. *Trans.* E-12.

The City of Seattle did not appeal the Municipal Court's decision and so the Court's decision became final on May 11, 2023.

## IV.    ARGUMENT

**A.    Conversion and the violation of Article 1, Section 7 of the Washington Constitution.**

"Impounding a car is a seizure under our state Constitution." *State v. Villela*, 194 Wn.2d 451, 458, 450 P.3d 170 (2019). Washington "courts have long held it is a constitutional requirement to consider reasonable alternatives to impoundment before impounding a vehicle." *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 155 n.8, 60 P.3d 53 (2002).[4]  "[A]n

---

[4] *Accord State v. Houser*, 95 Wn.2d 143, 153, 622 P.2d 1218 (1980) (same). *State v. Froehlich*, 197 Wn. App. 831, 838, 391 P.3d 559 (2017) (same); *State v. Hill,* 68 Wn. App.

*(Footnote continued next page)*

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

impound is *lawful* under article 1, section 7 only if, in the judgment of the impounding officer, it is reasonable under the circumstances and there are no reasonable alternatives." *Villela* at 460 (italics added).. When an "officer d[oes] not make that judgment, the impound [is] unlawful under our state constitution." *Id.*

The City concedes that "at this stage the Court must take as true" the municipal court's determination that the impoundment was unreasonable. *Dkt.* 17, 13:5-7. But the City then asserts that "this finding [of unreasonableness] does not negate or foreclose a finding that the impound was nonetheless *authorized by law* at its inception, and it does not automatically give rise to a conversion claim." *Id.*, 12:19-21 (italics added).  The City maintains that so long as impoundment is "authorized" by statute,[5] an "unreasonable" impoundment does not constitute a conversion because "for the purposes of Article 1, Section 7 of the Washington Constitution, the inquiry into whether an impoundment is authorized by law is separate from the inquiry into whether the impound was reasonable under the circumstances." *Id.*at 13.

But that argument is directly contrary to binding Washington precedent which holds that if an impound is <u>un</u>reasonable then it is *per se* unconstitutional. If "a reasonable alternative to impoundment exists, then it is unreasonable to impound a citizen's vehicle."); *Villela* at 459. In *State v. Hill,* the Court expressly held:

> Although *authorized by statute,* impoundment *must nonetheless be reasonable* under the circumstances *to comport with constitutional guaranties.*

---

300, 306, 842 P.2d 996 (1993) ("impoundment is inappropriate when reasonable alternatives exist"); *State v. Bales,* 15 Wn. App. 834, 836-37, 552 P.2d 688 (1976)("When "a friend or relative is available to move a vehicle … the arresting officer is not justified in calling for an impoundment ….").

[5] The City erroneously equates statutory authorization with compliance with a constitutional requirement.  *See Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005): "[T]he decision to impound pursuant to authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment").

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 10
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

68 Wn. App. at 305 (italics added).  Twice, the Washington Supreme Court has expressly affirmed this statement, in *Chevrolet Truck,* 148 Wn.2d at 151, n.4 and again in *State v. Tyler*, 177 Wn.2d 690, 698, 302 P.3d 165 (2013).  *See also State v. Coss,* 87 Wn. App. 891, 900, 943 P.2d 1126 (1997) ("It is clear … that a reasonable alternative to impoundment existed," but was not considered.  "Accordingly, the impoundment was *unreasonable and thus unlawful*.")(Italics added).

Thus, contrary to the City's representation, in Washington under article 1, section 7, reasonableness and lawfulness are *not* "separate inquiries."  The City argues that "reasonableness is not an element of a common law conversion claim."  *Dkt*. 17, 13:7-8.  But the City admits that unlawfulness *is* an element of conversion, and Washington case law unequivocally provides that every unreasonable warrantless impound is an unlawful impound.  Consequently, the municipal court's finding of unreasonableness automatically established that the impound of Horner's bus was unlawful because it did not comport with constitutional guaranties.

Since the impound was determined to be unlawful, automatically it was also an actionable conversion: "Conversion is a common law cause of action available to plaintiffs whose vehicles are *unlawfully* impounded." *Potter v. State Patrol*, 165 Wn.2d 67, 78, 196 P.3d 691 (2008)(italics added).  "[C]onversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *Id.* That is exactly what the Municipal Court found in this case.  Accordingly, the City's motion to dismiss this claim must be denied because Horner has plead a plausible claim for conversion.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 11
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**B.     Horner has plausibly alleged no less than four different violations of the Fourth Amendment.**

    **1.     The unlawful impound of Horner's home was a patently unreasonable seizure because it did not serve the purpose of the community caretaking exception.**

Vehicle impoundment is also a seizure under the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Under the Washington Constitution, an officer's failure to consider the availability of a reasonable alternative to impound *always* renders the impound unconstitutional. The Fourth Amendment does not impose such an inflexible *per se* requirement. Thus, "reasonableness" of a vehicle impound "does not ***necessarily or invariably***[6] turn on the existence of alternative 'less intrusive' means." *Colorado v. Bertine,* 479 U.S. 367, 374 (1987). That does not mean, however, that an officer's failure to consider the availability of reasonable alternatives is irrelevant to Fourth Amendment analysis.

"The touchstone of Fourth Amendment analysis is 'reasonableness.'" *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996). As the district court recognized in *Price v. Seattle*, 2005 WL 1189585 at *2 (W.D. Wash.): "The decision to impound a car "must meet the strictures of the Fourth Amendment," which requires that the impound must be reasonable." Therefore, "[t]he policy of impounding the car *without regard* to whether the defendant can provide for its removal *is patently unreasonable* if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id.* at *4 (italics added), quoting *Duguay,* 93 F.3d at 353.

In *Miranda*, the Ninth Circuit also cited and relied upon *Duguay.* 429 F.3d at 865. The *Miranda* Court recognized that a decision to impound that is not consistent with a police officer's role as a "caretaker" of the streets *may* be unreasonable, and held that under the circumstances of that case the impound *was* constitutionally unreasonable: "Viewing the evidence in the light most favorable to [the] Plaintiffs, … the impoundment must be considered

---

[6] The City *deleted these two words* when it quoted this sentence from *Bertine*. *Dkt.* 17, at 16:7-8.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 12
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1   an unreasonable seizure because the impoundment did not satisfy any acceptable purpose under
2   the community caretaking doctrine." *Id*. at 869. Accordingly, it reversed the summary judgment
3   that had been entered in favor of the city. *Id*.

4       In *Price,* a plaintiff class challenged Seattle's mandatory impound policy that required
5   police to impound the vehicle in *all* cases where the driver was driving with a suspended license
6   (DWLS). The court recognized that even though consideration of reasonable alternatives was
7   not required by the Fourth Amendment, the existence of a reasonable alternative was still
8   constitutionally relevant and that in some cases the mandatory impound policy would result in
9   seizures that violated the Fourth Amendment because a reasonable alternative to impound did
10  exist. *Price.* 2005 WL 1189585 at *1 & *4.[7]

11      The mandatory impound policy simply assumed that all impounds of cars driven by
12  drivers with a suspended license were constitutionally reasonable. The *Price* Court recognized
13  that this conclusion was illogical and that the absence of standardized criteria made it
14  "impossible to determine whether each impoundment was reasonable." *Price*, at *4.
15  Consequently, the *Price* Court denied Seattle's motion for summary judgment on the plaintiffs'
16  Fourth Amendment claim that the impounds of their vehicles violated the Fourth Amendment
17  reasonableness requirement.

18      In *Miranda* and *Price*, the plaintiffs' Fourth Amendment claims of constitutionally
19  unreasonable vehicle impounds, cleared the higher bar necessary to survive a summary
20  judgment motion. Similarly, in *Duguay*, the appellate court reversed the denial of a criminal
21  defendant's motion to suppress the evidence found as a result of the vehicle impound. *A*
22  *fortiori*, the facts plead by Horner are clearly more than sufficient to survive the City's motion
23  to dismiss. The facts plead here show that if Officer Strozier had simply agreed to wait for the
24  privately arranged tow truck, the private tow would have arrived and Horner's bus would have

25
26      [7] "[T]he relevant legal question is whether the City's mandatory impound policy furthers the
    community caretaking rationale such that impoundments under that policy were reasonable."

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 13
(2:24-cv-01488-RSL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

PB-0011 7810160

been removed from the street block to be cleaned long before Strozier's regular shift ended. Thus, Strozier's insistence on impounding Horner's bus served no conceivable purpose and therefore it violated the Fourth Amendment.

### 2. There were no standardized criteria that limited Officer Strozier's unfettered discretion to decide whether or not to impound Horner's bus, as required by *Bertine*.

Moreover, when considering the reasonableness of a decision to impound a vehicle, courts *must* consider whether an officer's discretion was controlled or limited by standardized criteria or policies. *Bertine* explained why:

> "[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."

*Bertine*, 479 U.S. at 375. *See also Florida v. Wells*, 495 U.S. 1, 4 (1990) (absence of standardized policy violated Fourth Amendment).

The existence of a "standardized criteria related to the feasibility and appropriateness" of an alternative to impound, *is* constitutionally required. *Bertine*, at 375-76. *Accord Price*, at *3 ("discretion is reasonable when exercised pursuant to standardized criteria or policy, but that when it is exercised absent such criteria or policy, it is not reasonable.").

In *Bertine*, the defendant argued that the impound of the van he had been driving when he was arrested was not reasonable because the officer should have considered whether to simply park and lock the van, and then leave it in a public parking place where the defendant could later retrieve it. The Supreme Court rejected this argument, however, because there *were* "standardized criteria related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it," and the officer "exercised [his discretion] in light" of those criteria. *Bertine*, at 375-76.

In *Duguay*, however, because it was *not* persuaded that there was a sufficiently standardized impound policy the Seventh Circuit found that the impound was *un*constitutional.

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 14
(2:24-cv-01488-RSL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

93 F.3d at 352.  *Accord United States v. Petty,* 367 F.3d 1009, 1012 (8th Cir. 2004) ("[s]ome degree of 'standardized criteria' or 'established routine' must regulate" warrantless impounds); *Price*, at *6 ("[t]he legality of an impound is determined based on whether there are standardized criteria or procedures for when impounds are appropriate.").

Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).  Thus, the City bears the burden of proving that the community caretaking exception applies in this case.  *Miranda*, 429 F.3d at 862.  That in turn requires the City to prove that the impound was carried out pursuant to standard police procedures.  *See South Dakota v. Opperman,* 428 U.S. 364, 375-76 (1976); *Bertine*, at 375-76; *Snitko v. United States*, 90 F.4[th] 1250, 1261 (9th Cir. 2024).  In this case, the City cannot meet that burden.

The testimony presented at the prior impound hearing affirmatively shows that the City did *not* have a standardized or uniform policy of refusing to wait past 9 a.m. for a privately arranged tow truck to arrive.  On the contrary, Mr. Shepard testified "I don't believe it's a city policy," he did not know whose "rule" it was, and admitted that it was *not* always followed because sometimes they did wait past 9.a.m. for private tow trucks to come.  *Trans.* B-25.  At best it was Officer Strozier's personal rule.  But a uniform Seattle policy is required precisely because without one there is nothing to "circumscribe the discretion of individual officers" who are left free to do whatever they feel like doing that day. *Bertine*, at 376, n.7.

In sum, Horner has plausibly alleged sufficient facts to show that Seattle cannot satisfy the *Bertine* requirement and therefore the City's motion to dismiss this claim should be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 15
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**3.  The impound was unreasonable because, given the available alternative of a private tow to a nearby gas station, Horner's private interest in her vehicular home far outweighed the asserted public interest in cleaning one block of a temporarily closed street.**

In addition, the impound of Horner's bus violated the Fourth Amendment because it is unreasonable to seize a person's only home and shelter merely because it is parked in a temporarily closed no-parking zone so that one block of the street can be cleaned.  The "very core" of the Fourth Amendment protects the home from unreasonable seizures. "[T]he overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic" cannot be disregarded.  *Payton v. New York,* 445 U.S. 573, 601 (1980).  The fact that a person's home is a vehicle and not a conventional house does not place that home beyond the protective ambit of the Fourth Amendment. *See, e.g.*, *Soldal v. Cook County,* 506 U.S. 56, 61 (1992) ("the Soldals' domicile was not only seized, it literally was carried away, giving new meaning to the term 'mobile home.' We fail to see how being unceremoniously dispossessed of one's home in the manner alleged to have occurred here can be viewed as anything but a seizure invoking the protection of the Fourth Amendment."). "'[R]easonableness is still the ultimate standard' under the Fourth Amendment" even when the home is a vehicular home. *Id.* at 71.  As always, the reasonableness determination requires a "careful balancing of governmental and private interests." *Id.*

In *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016), a district court granted a 12(b)(6) motion for dismissal of a similar Fourth Amendment claim brought by a man who lived on his 29-foot sailboat. Marine patrol officers seized his sailboat and destroyed it as "part of the City's systematic roundup and destruction of ugly boats" in what "the City calls a 'cleanup' program." *Id.* at 1274.  Hoefling asserted that his boat was not abandoned, posed no hazard to navigation, and that the officers were required to consider reasonable alternatives to seizure. *Id.* at 1275.  Relying on *Soldal*, the circuit court reversed the district court, holding that

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

the plaintiff's complaint was plausible on its face and sufficiently pled municipal liability claims for procedural due process and Fourth Amendment violations. *Id.* at 1280-81.[8]

Even when a seizure is authorized by a judicially issued search warrant, it still violates the Fourth Amendment if it is unreasonable. For example, in *Winston v. Lee*, 470 U.S. 753 (1985), a search warrant authorized the surgical retrieval and seizure of a bullet fired by a robbery victim from a criminal suspect's body. The Court found that the intrusion was an unreasonable search because the public's need for evidence was outweighed by the private interests of the suspect. While no one questioned the existence of probable cause to believe the bullet constituted evidence of a crime and could incriminate the defendant by identifying him as the robber, the Court held that the government had not shown a compelling need to conduct a surgical seizure and that the risks associated with the surgical procedure, such as infection, outweighed the government's need to seize the bullet. *Id.* at 765.

Similarly, in this case, Seattle did not need to seize and haul away Horner's vehicular home immediately, without even waiting until a private tow truck could get to the block on Colorado Avenue where the street cleaning was taking place. The seizure of Horner's home deprived her of her only shelter and of all her possessions stored in it. The purported justification for this massive deprivation was that Officer Strozier did not want to wait any longer because his shift would soon be over at 2 p.m. As the Municipal Court judge found, had Strozier agreed to wait for the privately arranged tow truck, that truck would have arrived well before the end of his shift. Thus, his refusal to wait accomplished nothing. In sum, Horner's complaint plausibly alleges that here, as in *Winston*, the seizure of her vehicular home was constitutionally unreasonable and violated the Fourth Amendment.

---

[8] The Court also reversed the district court's dismissal, on qualified immunity grounds, of the plaintiff's claim against the individual officer who impounded his sailboat. *Id*. at 1282.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**4.    After September 15th, the continuation of the impound for 55 days was an unreasonable seizure that violated the Fourth Amendment.**

"[A] seizure reasonable at its inception … may become unreasonable as a result of its duration …." *Segura v. United States,* 468 U.S. 796, 812 (1984).  *See, e.g.*, *United States v. Dass,* 849 F.2d 414, 414-15 (9th Cir. 1988)(initial warrantless seizure of packages was reasonable but continuation of package impounds for periods ranging from seven to twenty-three days was unreasonable and violated Fourth Amendment).

In *Brewster v. Beck,* 859 F.3d 1194, 1196 (9th Cir. 2017), the plaintiff loaned her car to Yonnie Percy.  The police stopped Percy, arrested him for driving while license suspended, and impounded the car.  Pursuant to a statute that prohibited release of the vehicle for thirty days, they refused to release it to Brewster until the thirty days had expired. Although the initial seizure and impound of her vehicle was lawful, the Court held that the 30-day continuation of the impound violated the Fourth Amendment. The community caretaking exception justified the *initial* warrantless seizure because allowing Percy to continue to drive the vehicle jeopardized public safety.  But "[t]he exigency that justified the seizure vanished" once Brewster showed up at the impound to claim the vehicle. *Id.* at 1196.  Recognizing that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Id.* at 1197.

> A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force.  Thereafter, the government must cease the seizure or secure a new justification.

*Id.  Accord Sandoval v. County of Sonoma,* 912 F.3d 509, 516 (9th Cir. 2018).

The same principle applies in this case.  Once the bus was towed away from the intersection of Hudson and Colorado Avenue and arrived at Lincoln Towing's impound lot there was no longer any reason to continue to hold the bus and refuse to release it for another 55 days. Because Horner has plead a plausible Fourth Amendment claim for an unreasonably prolonged seizure, the motion to dismiss should be denied.

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**5.     The applicable Fourth Amendment principles were well-established at the time Officer Strozier ordered impoundment.**

The City contends that Officer Strozier is entitled to qualified immunity because his violation of the Fourth Amendment was not clearly established at the time he decided to impound Horner's bus. This is simply incorrect.

There is no shortage of controlling Supreme Court precedent.  It was established long ago that *all* seizures must be reasonable, *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006), and that all warrantless searches and seizures – especially searches and seizures of a home – are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Leon,* 468 U.S. 897, 960 (1984).  Police bear "a heavy burden" when attempting to overcome this presumption.  *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984).

In the specific context of the warrantless impound of a vehicle, the police bear the burden of proving that the community caretaking exception applies; *and* that the impound was carried out in accordance with standardized criteria; *and* that it was reasonable in light of the feasibility and appropriateness of alternatives to impound.  *Bertine,* 479 U.S. at 375; *Miranda*, 429 F.3d at 862; *Cervantes*, 703 F.3d at 1141. Similarly, the principle that a seizure valid at its inception can become unreasonable if it continues for an unjustified period of time was established forty years ago and has been applied twice by the Ninth Circuit in the context of vehicle impounds.  *Segura v. United States,* 468 U.S. at 812; *Brewster,* 859 F.3d at 1196; *Sandoval,* 912 F.3d at 516. Fourth Amendment protection against the warrantless seizure of a vehicular home was clearly established in *Soldal v. Cook County,*  506 U.S. 56, 61 (1992), and was applied 8 years ago in *Hoefling* where the Eleventh Circuit reversed the district court's grant of a dismissal motion. Seattle has clearly been aware of these principles since the *Price* district court denied its motion for summary judgment in a class action case challenging car impounds nearly 20 years ago. 2005 WL 1189585 at *2 & *4.  Officer Strozier is not entitled to qualified immunity.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS  – 19
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**C.      The City's failure to train its officers regarding the impounding of vehicles that unhoused people are living in is a custom or policy for which the city is responsible. This failure caused Horner to suffer violations of the Eighth Amendment Excessive Fines Clause and the Fourth Amendment.**

The record from the prior impound hearing shows that the city has no standardized rules regarding whether to impound a vehicle, or whether to give the owner time to arrange to have someone move the vehicle to another location. This case, and cases like *Seattle v. Long*, 198 Wn.2d 136, 493 P.3d 94 (2021), show there is an obvious need to train Seattle police officers how to exercise their discretion when making the impound decision.   "[When] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need … the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable." *Canton v. Harris,* 489 U.S. 378, 390 (1989). The number of unhoused people living in vehicles in Seattle is well known to the City.  See *Long*, at 171 ("In King County … over 2,000 [unhoused] … individuals live in their vehicles."). Given Long's meager income (which was slightly more than Horner's income), the Court held that the imposition of the costs of towing and storage on Long violated the Excessive Fines Clause of the Eighth Amendment. *Id.* at 174-75.[9]

The *Long* Court also held that the impound did not constitute an unreasonable seizure in violation of article 1, section 7, but *only* because Long's truck "was in need of repairs and could not be driven." Thus, "under the circumstances … no [reasonable] alternatives [to impound] existed." *Id.* at 157. In the present case, however, as the municipal court judge expressly found, there *was* a reasonable alternative to impound and yet Officer Strozier refused to allow it.

---

[9] Thus, at least since *Long* was decided, the need to train its officers not to violate the Eighth Amendment was obvious.

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Similarly, the need to train officers not to violate the Fourth Amendment, and the need for standardized criteria to guide officer discretion as to when to impound a vehicle, should have been obvious since the Supreme Court's decisions in *Soldal* in 1992 and *Bertine* in 1987. As *United States v. Proctor*, 489 F.3d 1348, 1351 (D.C. Cir. 2007) illustrates, the Washington, D.C. police department has had a written policy on vehicle impounds since 1972, which the impounding officers violated by failing to provide the arrested driver with an "opportunity to arrange for its removal." *Id.* at 1354. The *Proctor* Court held this was a violation of the Fourth Amendment. Similarly, in the present case Seattle's failure to have a similar policy and to train its officers to follow it, violated Horner's Fourth Amendment rights. If Seattle had had a similar policy, then presumably Officer Strozier would have followed it and no violation of the Fourth Amendment would ever have occurred. *Cf. Sandoval*, 912 F.3d at 517 (affirming grant of summary judgment for plaintiff on *Monell* claim).

In sum, Horner has plausibly alleged a policy or custom that satisfies *Monell* and renders the City liable for depriving Horner of both her Fourth and Eighth Amendment rights.

**D.    Controlling precedent holds that even a five-day delay before providing a hearing at which the owner of an impounded vehicle can contest the impound and seek to regain possession of her vehicle violates procedural due process.**

The City address the adequacy of the pre-seizure notice that vehicles parked on the 5000 block of South Colorado street had to be moved before September 15 or else they would be removed. But Horner's procedural due process has nothing to do with the adequacy of the pre-seizure notice. Instead, Horner's claim is that due process was violated by the five-month delay in obtaining a hearing to contest the validity of the impound and swiftly regain possession of her bus. More than forty years ago, the Ninth Circuit held that even a five-day delay before holding a post-seizure hearing violated due process when the vehicle owner had no way of regaining possession of the vehicle:

> ***A five-day delay*** in justifying detention of a private vehicle ***is too long.*** Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle.

*Stypmann v. San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977)(emphasis added). *Accord Lee v. Thornton*, 538 F.2d 27, 33 (2nd Cir. 1976) (holding due process required a full hearing within 72 hours of the impound).

     *Stypmann* controls this case. Defendants' motion to dismiss this claim must be denied.

**E.**    **Negligence liability of bailee who fails to exercise ordinary care to protect against theft.**

     The City claims that there is no legal duty to protect impounded property from theft or damage. But in fact, there is such a well-recognized common law duty. *See, e.g., S.S. Kresge Co. v. Port of Longview*, 18 Wn. App. 805, 807, 811, 573 P.2d 1336 (1977)(recognizing duty of a warehouseman to protect the property of others that he is storing); *Firestone Tire v. Pacific Transfer*, 120 Wash. 665, 670, 208 P. 55 (1922)(recognizing the duty to protect property of another from theft). Thus, when a car owner takes his car to a shop for repairs and leaves it there a bailment relationship is formed. The car owner is the bailor, and the shop owner is the bailee who is liable for loss or damage to the car when he fails to exercise ordinary care to protect it. *Chaloupka v. Cyr*, 63 Wn.2d 463, 387 P.2d 740 (1963). When a car owner entrusts car to another and the car is then stolen due to the bailee's negligence, the bailee is liable for the theft. *See, e.g., McAshan v. Cavitt,* 227 S.W.2d 340, 341-42 (1949)

     While most bailments are voluntary, courts recognize that when a car is impounded by a city police department, or by a private towing company under contract with a city, an involuntary or constructive bailment is created so that the police and/or the private towing company have the same legal duty to vehicle owner to exercise ordinary care to prevent vandalism or theft of the vehicle. *American Ambassador Cas. Co. v. City of Chicago*, 563 N.E.2d 882 (1990), *appeal denied*, 567 N.E.2d 328 (1991), overruled on other grounds

---

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

American Family Mutual Ins. v. Tyler, 68 N.E.3d 442, 446 (2016); Hadfield v. Gilchrist, 538 S.E.2d 268, 272-73 (S.C. 2000); People v. Andrews, 85 Cal. Rptr. 908, 911 (Cal. App. 1970).

**F.      Conspiracy to violate Washington Homestead Act**

In *Seattle v. Long,* the Court held that the assertion of the Homestead Act was "premature" because "Seattle has not sought to collect on Long's debt." 198 Wn.2d at 152. There was no attachment in that case because the City did not seek to secure a monetary judgment against Long.  *Id.*  Relying on *Long,* the City maintains that Horner's Homestead Act claim must be dismissed because, like Long's *defense* to the City's claim that *he owed the City* payment for the cost of the impound, Horner's claim is premature.

But obviously the circumstances are quite different. Long was *not* bringing a damages action against the City and he was not claiming that *the City owed him* money. But Horner *is* asserting a claim of civil conspiracy against Lincoln and the City because their agents conspired to violate her Homestead Act rights.  "A conspiracy is a combination of two or more persons to commit a criminal act or unlawful act, or to commit a lawful act by criminal or unlawful means, or a combination of two or more persons by concerted action to accomplish an unlawful purpose, or some purpose not in itself unlawful by unlawful means." *Lewis Pacific Dairymen's Ass'n v. Turner*, 50 Wn.2d 762, 772, 314 P.2d 625 (1957).  To prevail on a civil conspiracy claim it is not necessary to show that the goal of the conspiracy was  accomplished or that the conspiracy was completed. Simply making an agreement to jointly seek the same goal is enough to establish liability.

In this case, as the Complaint alleges, Officer Strozier and the Lincoln tow truck driver, engaged in concerted action.  Strozier instructed the driver to tow Horner's bus and the driver did so. Their purpose was to immediately deprive Horner of her home, immediately create a lien in favor of the towing company for the value of its towing and storage services, and subsequently lead to the judicial imposition of a debt and an attachment to secure that debt.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS  – 23
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1   Since their purpose was to do something that would lead to a violation of the Homestead Act,

2   they engaged in an unlawful conspiracy.  But even if it was not their purpose to violate the

3   Homestead Act, their concerted action was still unlawful because their purpose was to cause

4   Horner to suffer an injury – the loss of her vehicular home – and there is no lawful right to use

5   the processes of the courts to wrong or injure another person.  *Eyak River Packing Co. v.*

6   *Huglen,* 143 Wash. 229, 234, 236, 255 P. 123 (1927)(unlawful conspiracy exists when

7   conspirators' purpose "is unnecessarily to ruin or damage the business of another).  In this case,

8   given the municipal court judge's express finding that there was a reasonable alternative to

9   impound her bus, the allegations of the complaint clearly support the inference that Strozier and

10  the Lincoln driver intended to "unnecessarily" wrong or injure Horner by seizing and towing

11  her home.  Thus, the complaint plausibly pleads a cause of action for civil conspiracy against

12  Lincoln and the City.

13  **G.     Consumer Protection Act claims against Lincoln Towing and the City.**

14          Lincoln Towing is a private for-profit corporation and can be held liable under the Act

15  for unfair acts committed in the course of trade or commerce.  *See, e.g., Rush v. Blackburn,* 190

16  Wn. App. 945, 967-70, 361 P.3d 217 (2015)(reversing dismissal of CPA claim against

17  individual doing business as the Top Notch Towing company). However, Horner acknowledges

18  that the City of Seattle is not a "person" for purposes of the CPA and thus cannot be sued for

19  violating the Act.

20  **H.     Damages action for violation of art. 1, §7.**

21          So long as a plaintiff can obtain adequate relief under the common law, the Washington

22  Supreme Court has declined to decide whether to recognize an implied cause of action for

23  damages for violation of a state constitutional right. *Reid v. Pierce County*, 136 Wn.2d 195,

24  213, 961 P.2d 333 (1998) (recognizing the availability of a common law action for invasion of

25  privacy).  Here, because Horner can obtain adequate relief in an action for conversion, it is

26

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 24
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

unnecessary to decide whether she also has an implied cause of action for violation of art. 1, §7.

## V.     CONCLUSION

The City's motion to dismiss the Consumer Protection Act claim against it (but not the CPA claim against Lincoln) should be granted. In all other respects, the City's motion should be denied.  Accepting all alleged facts as true, and drawing all reasonable inferences in her favor, Horner's complaint plausibly pleads sufficient facts to meet the *Iqbal* test with respect to all her other claims raised.

DATED this 27th day of December, 2024.

_s/James E. Lobsenz_
James E. Lobsenz WSBA #8787
lobsenz@carneylaw.com
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104

_s/Fadi M. Assaf_
Fadi M. Assaf WSBA #53687
fadi.assaf@nwjustice.org
NORTHWEST JUSTICE PROJECT
401 2nd Ave S., Suite 407
Seattle, WA 98104
206-707-0852

*Attorneys for Plaintiff*

I certify that this memorandum contains 8,366 words, in compliance with the Local Civil Rules.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS  – 25
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of December, 2024, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys Defendants City of Seattle and Robert Strozier**
Joseph Everett, Assistant City Attorney
Dallas LePierre, Assistant City Attorney
Carson W. Canonie, Assistant City Attorney
Civil Division, Seattle City Attorney's Office
701 5th Avenue Suite 2050
Seattle WA  98104
Joseph.Everett@seattle.gov
Dallas.LePierre@seattle.gov
Carson.Canonie@seattle.gov

**Attorneys for Defendant Lincoln Towing, Inc.**
Daniel P. Mallove
LAW OFFICE OF DANIEL P. MALLOVE, PLLC
2003 Western Avenue, Suite 400
Seattle, WA  98121
dmallove@dpmlaw.com

DATED this 27th day of December, 2024.

_s/ Deborah A. Groth_
Legal Assistant

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS  – 26
(2:24-cv-01488-RSL)

PB-0011 7810160

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020