1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

7

8  CHANEL HORNER,

9                    Plaintiff,

10      v.

11  CITY OF SEATTLE; OFFICER ROBERT
    STROZIER; and LINCOLN TOWING
    ENTERPRISES, INC.,

12                    Defendants.

NO. 2:24-cv-01488-RSL

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**NOTE ON MOTION CALENDAR:**

**January 24, 2025**

13

14

## I.    INTRODUCTION

15          Seattle and Lincoln Towing are quite familiar with plaintiff Horner's conversion, Fourth

16  Amendment and procedural due process claims, because they litigated nearly identical claims

17  in *Price v. Seattle*, C03-1365P.  In that case, a plaintiff class challenged Seattle's policy which

18  "required police officers to impound every vehicle after its driver was pulled over and it was

19  discovered that the driver has a suspended license regardless of the circumstances and whether

20  there were reasonable alternatives to impoundment."  *Price v. Seattle*, 2005 WL 1189585 at *1

21  (W.D. Wash.).  Seattle moved for summary judgment on the class's Fourth Amendment claims.

22  Relying on *Colorado v. Bertine*, 479 U.S. 367 (1987), the district court recognized that "*Bertine*

23  made the lawfulness of inventory searches dependent on there being some standardized

24  procedures or criteria that guided the discretion used [by police officers] in carrying out the

25  search."  *Id.* at *5.  "Because *Bertine's* holding applies equally to impounds as to inventory

26  searches," the district court held that" the legality" of the impounds of the plaintiffs' vehicles

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 1
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

was also necessarily called into doubt, and therefore the court denied Seattle's motion for summary judgment. *Price*, 2005 WL 1189585 at *6-7.

The plaintiffs then filed a motion for Partial Summary Judgment on their Conversion Claim *(Dkt. No. 120) and the City filed a motion to Dismiss Class Liability Claims (Dkt. No. 123). The district court considered these two motions simultaneously. First, the district court granted the plaintiffs' motion for partial summary judgment on their conversion claim:

> The Court GRANTS Plaintiffs' motion. The City's DWLS impound policy did not allow officers to exercise the necessary discretion to consider the availability of reasonable alternatives to impound. It was effectively a mandatory impound policy with limited exceptions. The City does not present sufficient evidence to show a genuine issue of fact on this question. *A policy barring consideration of reasonable alternatives to impound is unlawful. Impounds carried out pursuant to such an unlawful policy constitute conversion.*"

*Price v. Seattle,* 2005 WL 1528957, at *6. (W.D. Wash.) (italics added).

The district court also denied the defendants' motion to dismiss the plaintiff s' "due process post-impound hearing claim." *Id.*

In the present case, the Seattle Municipal Court judge has *already found* that the impoundment of Horner's bus was unlawful because a reasonable alternative to impound did exist and Officer Strozier simply refused to consider it:

> I'm finding that the impound was [–] that the officer did not find the [–] or did not consider reasonable alternatives, seeing as one was actually available as well …. I am finding that the impound was improper and unlawful.

*Transcript*, E-9.

Under the doctrine of collateral estoppel, that determination of unlawfulness cannot be relitigated. Here, as in *Price,* the Court should grant the plaintiff's motion for partial summary judgment on her conversion claim against both Officer Strozier and the City of Seattle, and on her Fourth Amendment claims against both of them based on *Bertine*, *Snitko*, *Miranda,* and *Brewster*.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 2
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Finally, because the City denied Horner's due process by failing to hold a post-impound hearing within five days as required by *Stypmann v. City of San Francisco,* 557 F.2d 1338, 1345 (9th Cir. 1977), the Court should grant partial summary judgment in favor of Horner on this claim as well.

## II.    EVIDENCE RELIED UPON

The following declarations are submitted in support of this motion:

1. Declaration of Chanel Horner.

2. Declaration of James E. Lobsenz.

3. Declaration of Fadi Assaf.

4. Declaration of Louise Akerblom.

## III.    SUPPLEMENTAL STATEMENT OF FACTS

Rather than repeat the lengthy Statement of Facts set forth in *Plaintiff's Opposition to Defendants' Motion to Dismiss* (pages 4-9), that Statement is incorporated by reference here. A few additional facts pertinent to the Plaintiff's procedural due process claim are set forth here.

Because Lincoln Towing employees refused to give her a copy of the Vehicle Impound Request form, Horner, with assistance from her attorney, looked for a copy of the form, finally found it on the website maintained by the Washington Department of Licensing, and downloaded it from that site. *Horner Decl.* ¶41. Again with the assistance of her attorney, Horner filled out the form and submitted it to the Seattle Municipal Court on November 17, 2022. *Id.*; *Declaration of Assaf,* ¶25. On the same date, Horner's counsel, Mr. Fadi Assaf, also filed a declaration with the municipal court. His declaration contained a number of attachments including a letter, dated October 12, 2022, from Ms. Kelli Jo Day addressed to Mr. Dan Mallove, the attorney for Lincoln Towing. *Horner Decl.,* ¶42, Exh. C; *Assaf Decl.,* ¶¶25, 27. In that letter, Ms. Day informed Lincoln that although she was still the registered owner of the

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 3
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

bus, that she and her husband had "sold it to Vance Mclay, who later sold it to Chanel Horner"; and that "[N]o registration in Washington State took place in connection with the subsequent sales, so we are still the registered owners, but Ms. Horner is, in fact, the true owner of the bus." *Horner Decl., ¶*42.

In her letter, Ms. Day further informed Lincoln Towing: "Pursuant to RCW 46.55.120(1)(a)(iii), I am writing to authorize you to release the bus to Ms. Horner." *Horner Decl.*, ¶43, Exh. C.  Thereafter, on November 9, 2022, Lincoln Towing did release the bus to Horner.  *Horner Decl.,* ¶43; *Assaf Decl*., ¶16.

Initially, the Seattle Municipal Court denied Ms. Horner's request for an impound hearing explicitly because the bottom part of the hearing request form was not signed by Lincoln Towing.[1] *Assaf Decl.,* ¶19.  Horner appealed the Magistrate's denial of her hearing request and on March 7, 2023, a Seattle Municipal Court judge overturned the Magistrate's decision and granted Horner's request for an impound hearing.  *Horner Decl.,* ¶47, Exh. E; *Assaf Decl.,* ¶24.  The impound hearing was finally held on April 11, 2023, nearly seven months after her bus was impounded, and five months after it had been released to her.  *See Trans.* A-2.  As previously noted, at the conclusion of that hearing, the municipal court judge found that the impound was unlawful.  *Trans.* E-9.

## IV.    ARGUMENT

### A.    Conversion

#### 1.    Collateral estoppel precludes relitigation of an issue which was previously decided.

Collateral estoppel "'prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case.'" *Barr v. Day,* 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994). "The doctrine of collateral estoppel is well-known to Washington law as a means

---

[1] In a letter from the Seattle Municipal Court dated December 15, 2022, Cindy Campbell, the Court Clerk Supervisor, writes: "Per Magistrate Chung, your motion for an impound hearing for Chanel Horner has been denied due to the form not being properly completed. Authorized by code 11.30.120(D)." *See Assaf Decl.,* ¶20, Exh. F.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 4
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

of preventing the endless relitigation of issues actually litigated by the parties and decided by a competent tribunal. [It] promotes judicial economy and prevents inconvenience, and even harassment, of parties." *Reninger v. Department of Corrections,* 134 Wn.2d 437, 449, 951 P.2d 782 (1998).

There are four elements which must be satisfied for collateral estoppel to apply:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*Thompson v. Department of Licensing,* 138 Wn.2d 783, 790, 982 P.2d 601 (1999).

Federal courts must give the same preclusive effect to state court judgments that those judgments would be given in courts of the State where the judgment was entered. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 (1982); *Clark v. Yosemite Community College District,* 785 F.2d 781 (9th Cir. 1986).

### 2.    An issue previously litigated in state court cannot be relitigated in a subsequent federal court action.

It is not uncommon for a party that lost in a state court proceeding to attempt to relitigate the same issue in a subsequent federal court action. For example, in *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995), Gina Shaw, an African-American woman, was called for jury duty in *Tapia v. Gates,* a state court civil action against the City of Los Angeles. The plaintiffs alleged that an off-duty city police officer violated their constitutional rights by shooting them during an altercation. During voir dire the City's attorney removed Shaw from the jury by exercising a peremptory challenge.  The plaintiffs objected to the challenge alleging that it was based on race and therefore violated *Batson* v. *Kentucky*, 476 U.S. 79 (1986).  The state court trial judge permitted the peremptory challenge and excused Shaw from the jury. *Shaw*, at 1129. The trial judge rejected the contention that the challenge was racially motivated noting that the City's attorney had not challenged another African-American juror.  *Id.*  Two months later,

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 5
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

pursuant to under 42 U.S.C. §1983, Shaw brought suit in federal district court against the City and its attorney alleging that the City had violated her equal protection rights by removing her from the jury on the basis of her race. *Id.* The district court dismissed the suit and the Ninth Circuit affirmed that dismissal on the ground that the suit was barred by collateral estoppel:

> Judge Wilson necessarily decided as part of the *Tapia* action whether the defendant's peremptory challenge against Shaw was racially discriminatory. He held it was not. We turn then to whether the issue was fully and fairly litigated by the parties in the *Tapia* action. … Judge Wilson required the defendants to articulate a neutral basis for the challenge. After considering the defendants' proffered reasons, Judge Wilson concluded that they were neutral, nonpretextual, and comported with his own observations.

*Shaw*, at 1131.

Shaw argued that she was neither a party nor in privity with a party to the prior proceedings, and therefore collateral estoppel did not bar her from relitigating the issue of race discrimination. But the court disagreed, finding that she was in privity with the *Tapia* plaintiffs, and that the issue was fairly litigated in the prior state court action. *Id.* Consequently, the state court judge's "determination binds her just as it did the *Tapia* plaintiffs." *Id.* at 1132. Thus, collateral estoppel applied and Shaw's action was barred because "[t]he doctrine of issue preclusion prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Id.* at 1131.

### 3. An issue previously litigated in a state court vehicle impound hearing cannot be relitigated in federal court.

As the decision in *Ernst v. City of Chicago*, 63 F.Supp.2d 908 (N.D. Ill. 1999) illustrates, issues previously determined in a state court vehicle impound hearing are subject to the same collateral estoppel bar as they are in any other type of civil action. In *Ernst,* the City impounded and towed four of the plaintiff's vehicles from a gravel lot located on private property behind his home. Ernst challenged the impound in state court alleging that the tows violated municipal laws, and he eventually won a state court ruling that the impound was invalid. But Ernst did not raise any federal constitutional claims in the state court case.

Thereafter, Ernst brought suit against the city in federal court, attempting to raise a number of federal constitutional claims that he could have raised in state court, but failed to raise in that prior action. The federal court held that issue preclusion[2] applied to the claims that Ernst had previously brought in state court, and claim preclusion applied to the federal constitutional claims that he could have brought. *Id.* at 910 ("The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit.").

### 4. Defendants may not relitigate the issue of whether the impoundment was unlawful.

All four elements of collateral estoppel ("issue preclusion") are met in this case. The issue determined at the municipal court impound hearing was whether Seattle unlawfully impounded Horner's bus when they seized it and towed it away. The issue in this case is the same. For purposes of the claim of conversion, the issue is whether Seattle unlawfully interfered with Horner's possession of the bus. Thus, the first element is met.

The prior adjudication in municipal court ended with entry of a final judgment on the merits and an express finding that the impound was "unlawful." Thus, the second element is met.

Seattle was a party to the prior impound hearing. Lincoln Towing is an agent of Seattle because its tow truck drivers carry out directions from Seattle Police Officers when the officers instruct them to impound a vehicle, and they did so in this case. Thus, Lincoln is in privity with Seattle. *See Stypmann v. City of San Francisco,* 557 F.2d 1338, 134-42 (9th Cir. 1977) (where police officer makes the initial determination that a car will be towed and "the towing company, tows the vehicle only at the direction of the officer," the company "is a willful participant in a

---

[2] The court used the term claim preclusion in order to distinguish that concept from issue preclusion thereby avoiding any potential for confusion engendered by the older practice of using the term res judicata to refer to both types of preclusion. *Id.* at 910, n.3.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 7
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

joint activity with the State" and "the action of the towing company ... may be fairly treated as that of the State itself."). The third element, therefore, is met.

Application of collateral estoppel works an injustice when the party resisting application of the doctrine did not have a full and fair opportunity to litigate the contested issue. *Weaver v. City of Everett,* 4 Wn.App.2d 303, 316, 421 P.3d 1013 (2018). Here Seattle had a full and fair opportunity to litigate the lawfulness of the impound. Thus, the fourth element of collateral estoppel is satisfied.

### 5.    All the elements of the tort of conversion have been established as a matter of law.

Conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it. *Brown ex rel Richards v. Brown,* 157 Wn.App. 803, 817, 239 P.3d 602 (2010). "Conversion is a common law cause of action available to plaintiffs whose vehicles are unlawfully impounded." *Potter v. Washington State Patrol*, 165 Wn.2d 67, 78, 196 P.3d 691 (2008). The tort of conversion "need not involve a permanent deprivation of property, it includes a temporary deprivation." *Price v. Seattle*, 2005 WL 1528957 at *2, citing *Demelash v. Ross Stores, Inc.,* 105 Wn.App. 508, 522, 20 P.3d 447 (2001). Thus, any unlawful vehicle impound constitutes a conversion. *See, e.g.*, *Boss v. City of Spokane,* 63 Wn.2d 305, 307, 387 P.2d 67 (1963)(officer liable for conversion because he acted unlawfully when he impounded vehicle because owner had seven unpaid parking tickets for overtime parking; he was only authorized to impound a vehicle that was parked "in a such a position that it constitutes an obstruction to traffic, blocks the use of a fire hydrant, [or] provides a danger to travel").

In this case, it is undisputed that Officer Strozier and the Lincoln Towing truck driver at his direction, willfully deprived Chanel Horner of her bus and deprived her of possession of it. While the City previously argued that this action was lawful, in the prior municipal court impound hearing the judge determined that this action was unlawful. Since this determination

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 8
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

cannot be relitigated, all the elements of conversion have been established as a matter of law. Here, as in *Price,* this Court should grant Horner's motion for partial summary judgment in her favor on her claim for conversion, leaving for trial the question of damages.

**B.    Fourth Amendment Violations**

There are four separate and independent violations of the Fourth Amendment.  Horner moves for summary judgment on each one of them.

> **1.    The decision to impound instead of simply waiting for the privately arranged tow truck to arrive and tow the bus to a nearby gas station violated the Fourth Amendment's prohibition against unreasonable seizures.**

The impoundment of a vehicle is also a seizure under the Fourth Amendment.  *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).  When assessing the constitutionality of a vehicle impound under the Washington Constitution, an officer's failure to consider the availability of a reasonable alternative to impound always renders the impoundment unconstitutional.  But the Fourth Amendment is different. The Fourth Amendment does not impose such an inflexible *per se* requirement.   "The reasonableness of any particular governmental activity does not *necessarily or invariably* turn on the existence of alternative 'less intrusive' means." *Colorado v. Bertine,* 479 U.S. 367, 374 (1987)(italics added), quoting *Illinois v. Lafayette,* 462 U.S. 640, 647 (1983).

That does not mean, however, that an officer's failure to consider the availability of reasonable alternatives is irrelevant to Fourth Amendment analysis. "The touchstone of Fourth Amendment analysis is 'reasonableness.'"  *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996).  As the district court recognized in *Price v. City of Seattle*, 2005 WL 189585 at *2 (W.D. Wash.): "The decision to impound a car "must meet the strictures of the Fourth Amendment," which requires that the impound must be reasonable." "The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if

the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id.* at *4, quoting *Duguay,* 93 F.3d at 353.

In *Miranda v. City of Cornelius,* 429 F.3d at 858 (9th Cir. 2005), the Mirandas challenged the constitutionality of the impound of their vehicle. Mr. Miranda, a properly licensed driver, was teaching his wife how to drive. A police officer observed Mrs. Miranda driving at a speed of about ten miles per hour very slowly around the neighborhood. The officer suspected that she was impaired or improperly licensed, so he activated his overhead lights and followed the car until Mrs. Miranda pulled into the driveway in front of the Miranda home. Once he learned that Mrs. Miranda did not have a driver's license the officer issued her a citation for driving without a license, and he issued Mr. Miranda a citation for permitting an unlicensed driver to drive the car. *Id.* at 861. In addition, relying upon a city ordinance that authorized the impoundment of any car being operated by an unlicensed driver, the officer impounded the vehicle even though it was sitting in the Mirandas' private driveway. *Id.* The next day, after paying towing and impound fees, Mr. Miranda retrieved the car from the police impound lot.

The Mirandas then brought suit under §1983 alleging that the impound was an unreasonable seizure that violated the Fourth Amendment. *Id.* The district court granted the City's motion for summary judgment and dismissed the case. But viewing the evidence in the light most favorable to the non-moving party, the Ninth Circuit reversed holding that "the impoundment must be considered an unreasonable seizure because [it] did not satisfy any acceptable purpose under the community caretaking doctrine." *Id.* at 869.

> Whether an impoundment is warranted under th[e] community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft. … A driver's arrest, or citation for a non-criminal traffic violation as in this case, is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss. But no such public safety concern is implicated by the facts of this case involving a vehicle parked in the driveway of an owner who has a valid license.

*Miranda*, at 864.

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

*Miranda* controls the present case.  Like Mrs. Miranda, Horner committed a noncriminal traffic infraction because she failed to move her parked bus from the block where the "remediation" team was cleaning the street.  While she was driving, Mrs. Miranda's traffic violation did pose a safety hazard to the public because she was an unlicensed driver. But once Mrs. Miranda stopped the car and parked it in her driveway, she ceased to pose any safety hazard to anyone, and yet the officer impounded her vehicle, purporting to rely on the community caretaking exception to the warrant requirement of the Fourth Amendment.  The Court "conclude[d] that" given "the circumstances of this case, probable cause to believe that there had been a traffic violation or noncriminal violation was *insufficient to justify an impoundment* of a vehicle parked in the owner's driveway, in the absence of a valid caretaking purpose." *Id*. at 864 (italics added).  *A fortiori*, since Horner *never* committed any moving violation of the traffic laws, and never posed any safety hazard to anyone, probable cause to believe that she had committed a parking violation was also clearly "insufficient to justify an impoundment." This is especially true since Officer Strozier knew that arrangements had been made for a private tow truck to come and remove the bus from its present location where the street "remediation" was taking place.  Citing to this passage from *Duguay*, the *Miranda* Court concluded that the impound of the Mirandas' car was an unreasonable seizure: "The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets.'"  *Id.* at 865.  The impoundment of Horner's bus was even more egregiously unreasonable and unconstitutional than the impoundment of the Mirandas' vehicle.[3]

Similarly, in *Price* the plaintiff class challenged Seattle's mandatory vehicle impound policy ("Operation Impound") which "required police officers to impound every vehicle after

---

[3] The *Miranda* case was decided 17 years before the impoundment of Horner's bus.  Thus, the unconstitutionality of Officer Strozier's action was well-established and Officer Strozier cannot rely on the defense of qualified immunity.

its driver was pulled over and it was discovered that the driver had a suspended license regardless of the circumstances and whether there were reasonable alternatives to impoundment." *Id.* at *1. The district court recognized that the availability of a reasonable alternative to impound was relevant to the Fourth Amendment requirement of reasonableness even though consideration of reasonable alternatives was not always required:

> [T]he relevant legal question is whether the City's mandatory impound policy furthers the community caretaking rationale such that impoundments under that policy were reasonable.

*Price*, 2005 WL 1189585 at *4.

Since it could not be said that every impound carried out under the mandatory impound policy was constitutionally reasonable, and since the City's policy prevented its officers from making a case-by-case determination as to whether the impound was a reasonable seizure, the Court held that the City's impound policy was unconstitutional: "A policy barring consideration of reasonable alternatives to impound is unlawful. Impounds carried out pursuant to such an unlawful policy constitute conversion." *Price,* 2005 WL 1528957 at *6. Similarly, in this case, because Officer Strozier refused to consider the available alternative to an impound due to an alleged rule that prohibited waiting past 9 a.m. for the arrival of a private tow truck, the impound in this case was carried out pursuant to an unlawful policy which violated the Fourth Amendment and therefore also constituted a conversion.

2.   **Because there were no standardized criteria that limited Officer Strozier's unfettered discretion to decide whether or not to impound Horner's bus, as required by *Bertine,* the impound violated the Fourth Amendment.**

Moreover, when considering the reasonableness of a vehicle impound, courts must consider whether a police officer's discretionary decision of whether or not to impound was controlled or limited by standardized criteria or policies. *Bertine* reaffirmed the importance of a uniform policy that would guide officers making the impound decision:

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 12
(2:24-cv-01488-RSL)

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

PB-0011 7816846

1

"[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."

2

3   *Bertine*, 479 U.S. at 375. *See also Florida v. Wells*, 495 U.S. 1, 4 (1990) (warrantless inventory

4   search violated Fourth Amendment where Florida Highway Patrol had no standardized policy

5   for when such a search was permissible).

6          Thus, even though the consideration of possible available alternatives to impound is not

7   "invariably" required in order for an impound to comply with the Fourth Amendment, the

8   existence of a "standardized criteria related to the feasibility and appropriateness" of an

9   alternative to impound, <u>is</u> constitutionally required. *Bertine*, 479 U.S. at 375.

Even though there is no need to consider less intrusive alternatives, the exercise
of discretion is an important element in determining the reasonableness of
impounds and inventory searches. These cases hold that ***discretion is reasonable
when exercised pursuant to standardized criteria or policy, but that when it is
exercised absent such criteria or policy, it is not reasonable.***

13   *Price*, 2005 WL 1189585 at *3 (emphasis added).

14          In *Bertine*, after arresting the defendant for driving while intoxicated, instead of simply

15   leaving his van in a public parking place where the defendant could retrieve it later, the arresting

16   officer decided to impound it.   The Supreme Court rejected Bertine's argument that the

17   impound violated his Fourth Amendment rights because the officer exercised his discretion "in

18   light of standardized criteria, related to the feasibility and appropriateness of parking and

19   locking a vehicle rather than impounding it." *Bertine*, 479 U.S. at 375-76.

20          In the present case, however, there was no standardized impound policy which

21   controlled Officer Strozier's discretionary decision as to whether or not to impound Horner's

22   bus. Instead, this case is like *Duguay,* where the impound was held to be unconstitutional

23   because the officer's discretion was completely unfettered.  93 F.3d at 352.  *Accord United*

24   *States v. Petty,* 367 F.3d 1009, 1012 (8th Cir. 2004) ("Some degree of 'standardized criteria' or

25

26

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 13
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

established routine' must regulate [impounds] which may be conducted without the safeguards of a warrant or probable cause").

Similarly, in *Price* the district court recognized that "[t]he legality of an impound is determined based on whether there are standardized criteria or procedures for when impounds are appropriate." *Price*, 2005 WL 1189585 at *6.  Because Seattle's impound policy required vehicle impound in all cases where the driver of the car had a suspended driver's license, the Court recognized that it was impossible to say that the decision to impound was reasonable in all such cases.  *Id.* at *4. While the existence of sufficiently standardized departmental criteria governing an officer's discretionary impound decision will render a particular impound decision reasonable if it is conducted pursuant to those criteria, Seattle did not have a discretionary policy and thus had no standardized criteria to govern officer discretion.  Instead, the mandatory impound policy simply assumed that all impounds of cars driven by drivers with a suspended license were constitutionally reasonable.  The *Price* Court recognized that this conclusion was illogical and that the absence of standardized criteria made it impossible to find that the impound of any particular car complied with the Fourth Amendment's reasonableness requirement:

> Under the City's mandatory impound policy for DWLS violations, cars were impounded based on the crime of the driver, not whether the location of the car presented any safety or other hazards.  As such, it is impossible to conclude that impoundment always served community caretaking functions (even if it might have in particular cases).  This is especially relevant because, in some instances the DWLS-driver was not the car owner and there was no reason to assume that the owner could not have arranged to take custody of the car.  By not allowing the officers to consider alternatives to impoundment, the officers could not determine if the community caretaking interests justified impoundment, which means that it is impossible to determine whether each impoundment was reasonable.

*Price*, 2005 WL 1189585 at *4.  Consequently, the Court denied Seattle's motion for summary judgment on the plaintiffs' claim that the impounds of their vehicles violated the Fourth Amendment reasonableness requirement.

Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).  Thus, the City bears the burden of proving that the community caretaking exception applies in this case.  *Miranda*, 429 F.3d at 862.  That in turn requires the City to prove that the impound was carried out pursuant to standard police procedures.  *See South Dakota v. Opperman,* 428 U.S. 364, 375-76 (1976); *Bertine*, 479 U.S. at 375-76; *Snitko v. United States*, 90 F.4th 1250, 1261 (9th Cir. 2024). *Cf. United States v. Proctor,* 489 F.3d 1348 (D.C. Cir. 2007) (Fourth Amendment violated because the impounding officer violated the existing departmental policy which did contain standardized criteria).  In this case, the City cannot meet that burden.

The testimony presented at the prior municipal court hearing shows that Seattle did not have any standardized criteria for determining when an impound was reasonable.  Both Mr. James Shepard and Officer Strozier testified that the decision of whether or not to impound was entirely up to Strozier.  Officer Strozier testified that he was required to impound the vehicle if waiting for a private tow truck meant that the remediation crew had to work past the end of their regular shift, which in this case ended at 2:30 p.m.  *Trans.* at C-28. However, as the Municipal Court judge found, even if Officer's Strozier's personal rule refusing to wait past the end of a regular shift was viewed as a reasonable rule, it was not a standardized departmental rule, and thus it did not meet the requirement of *Bertine*.  And finally, as the Municipal Court judge further found, if Strozier had been willing to wait for arrival of the privately arranged tow truck, that truck would have arrived by approximately 12:30 and Strozier's regular shift did not end until 2:30 p.m. Thus, even if the Seattle Police Department had adopted a uniform rule which prohibited waiting past the end of the remediation team's regular shift before impounding a vehicle, and even if that uniform rule had been in place on September 15, 2022, Officer Strozier's refusal to wait for a private tow truck would not have violated that rule. Consequently, Strozier's discretion was *not* "exercised in light of standardized criteria related

to the feasibility and appropriateness of" an alternative to directing the City's towing agent to impound Horner's bus.  *Bertine*, 479 U.S. at 375-76.  Thus, the impound of Horner's bus violated the Fourth Amendment and did *not* comply with *Bertine*.[4]

> **3.      The impound was also unreasonable because the bus was her home, her only shelter, and contained all her possessions.**

In addition, the seizure and impound of an unhoused person's only home and only shelter, as well as every possession kept inside the seized vehicle, violates the Fourth Amendment because it is constitutionally unreasonable to effect such a seizure merely because it is parked in a temporarily closed no-parking zone so that the street can be cleaned.  The "very core" of the Fourth Amendment protects the home from unreasonable seizures.  *Payton v. New York,* 445 U.S. 573, 601 (1980) ("overriding respect for the sanctity of the home" … cannot be "disregard[ed]").  The fact that a person's home is a vehicle and not a conventional house does not place that home beyond the protective ambit of the Fourth Amendment. *See, e.g.*, *Soldal v. Cook County,* 506 U.S. 56, 61 (1992).("the Soldals' domicile was not only seized, it literally was carried away, giving new meaning to the term 'mobile home.'").  "'[R]easonableness is still the ultimate standard' under the Fourth Amendment" even when the home a vehicular home. *Id.*  at 71.  As always, the reasonableness determination requires a "careful balancing of governmental and private interests." *Id.*

In *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016), a district court granted a 12(b)(6) motion for dismissal of a similar Fourth Amendment claim brought by a man who lived on his 29-foot sailboat. Miami marine patrol officers seized his sailboat and destroyed it as "part of the City's systematic roundup and destruction of ugly boats" in what "the City calls a 'cleanup' program." *Id.* at 1274.  In his complaint, the plaintiff asserted that his boat was not abandoned or derelict, did not pose any hazard to navigation, and that the City's officers were

---

[4] Once again, Officer Strozier is not entitled to qualified immunity because over forty years ago *Bertine* established the unlawfulness of an impound that was not controlled by sufficiently standardized criteria.

required to consider reasonable alternatives to immediate seizure and destruction of the vessel. *Id.* at 1275.  The Circuit Court reversed the district court, holding that the plaintiff's complaint was plausible on its face and sufficiently pled a municipal liability claim for the alleged procedural due process and Fourth Amendment violations.  *Id.* at 1280. Like Horner, the Eleventh Circuit relied upon the Supreme Court's decision in *Soldal*. *Hoefling*, 811 F.3d at 1281. The Court also reversed the district court's dismissal, on qualified immunity grounds, of the plaintiff's claim against the individual officer who impounded his sailboat, noting that the district court failed to view the allegations of the complaint in the light most favorable to the plaintiff.  *Id*. at 1282.

Even when a seizure is authorized by a search warrant issued by a neutral magistrate, it still violates the Fourth Amendment if it is unreasonable. For example, in *Winston v. Lee*, 470 U.S. 753 (1985), notwithstanding the issuance of a warrant authorizing the retrieval and seizure of a bullet from a criminal suspect's body, the Court found that surgical intrusion was an unreasonable search which violated the Fourth Amendment because the public's need for evidence was outweighed by the private interests of the suspect.  While no one questioned the existence of probable cause to believe the bullet constituted evidence of a crime,[5] the risks associated with the surgical procedure, such as infection, or damage to nerves or muscles, outweighed the government's need to seize the bullet.

Similarly, in this case, the city did not have any compelling need to immediately seize and haul away Horner's vehicular home without even waiting until a private tow truck could get to the location on Colorado Avenue where the street cleaning was taking place.  The seizure of Horner's home not only deprived her of her only shelter, it also deprived her of all of her possessions.  And the purported justification for this massive deprivation was that Officer

---

[5] The government wished to show that it was fired by the shopkeeper who shot the man who was trying to rob him.  Recovery of the bullet inside the defendant indisputably had the potential to incriminate him by identifying him as the robber.  *Id.* at 765.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 17
(2:24-cv-01488-RSL)

PB-0011 7816846

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Strozier did not want to wait any longer because his shift would soon be over at 2 p.m. Moreover, as the Municipal Court judge found, had Strozier not refused to wait for the arrival of a privately arranged tow truck, that truck would have arrived well before the end of his shift. Thus, Officer Strozier's refusal to wait accomplished nothing at all, and ultimately resulted in Horner being deprived of everything she owned, except for the clothes she was wearing, for nearly two months. Here, as in *Winston*, the seizure was constitutionally unreasonable and thus violated the Fourth Amendment.

       **4.**     **Even assuming, *arguendo,* the initial seizure of Horner's bus on September 15 did not violate the Fourth Amendment, the continuation of the impound of her bus for 55 days was an unreasonable seizure.**

It is well established that "a seizure reasonable at its inception … may become unreasonable as a result of its duration or for other reasons." *Segura v. United States,* 468 U.S. 796, 812 (1984). *See, e.g., Sandoval v. County of Sonoma,* 912 F.3d 509, 516 (9th Cir. 2018) (affirming summary judgment for plaintiffs and holding that impound was unconstitutional and unreasonable because it lasted for 30 days long after community caretaking justification of initial seizure had ceased to exist). *Accord Brewster v. Beck,* 859 F.3d 1194, 1196 (9th Cir. 2017). Similarly, in *United States v. Dass,* 849 F.2d 414, 414-15 (9th Cir. 1988), police validly seized packages that they suspected contained drugs, but the Court held that the length of the warrantless seizures in that case – which ranged from seven to twenty-three days – violated the Fourth Amendment. In *Brewster* the plaintiff loaned her car to Yonnie Percy, her brother-in-law. The police stopped Percy and discovered that his driver's license was suspended. They then seized and impounded the vehicle and pursuant to a statute they continued to refuse to release the vehicle to Brewster until thirty days after the initial seizure. Brewster conceded that the initial seizure and impound of her vehicle was lawful but claimed the 30-day continuation of the impound violated the Fourth Amendment. The Court held that the community caretaking exception justified the *initial* warrantless seizure because allowing Brewster to continue to possess and drive the vehicle jeopardized public safety. But "[t]he exigency which justified the

seizure vanished" once Brewster showed up at the impound to claim the vehicle. *Id.* at 1196. Recognizing that "[t]he Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Id.* at 1197.

> A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force.  Thereafter, the government must cease the seizure or secure a new justification.

*Id.*

The same principle applies in this case.  Once the vehicle was towed away from the block on Colorado Avenue and arrived at Lincoln Towing's impound lot there was no longer any reason for continuing to hold the bus and prevent her from taking possession of it.  If, as in *Dass*, the continuation of a warrantless seizure of a mailed package violates the reasonableness requirement of the Fourth Amendment if it lasts for a period of seven days, then *a fortiori* the continued warrantless possession of Horner's vehicular home and all her possessions contained in it for a period of 55 days also violates the Fourth Amendment.  Once Horner's bus was no longer blocking the remediation crew from cleaning up the sidewalks on the particular block of Colorado Avenue where it was parked, there was no further justification for continuing to keep it in the impound lot and deny her possession of it.

In sum, there are four separate and independent reasons why the impound of Horner's bus also violated the Fourth Amendment. Thus, this Court should grant Horner's motion for partial summary judgment on each one of her Fourth Amendment claims.  Moreover, each Fourth Amendment violation is yet another reason, in addition to the violation of art. 1, §7 of the Washington Constitution, why the impound of her bus was unlawful.  Thus, there are five separate reasons for granting partial summary judgment in Horner's favor on her conversion claim.

## C.    Procedural Due Process claim.

Horner's legal entitlement to a speedy post-deprivation hearing to contest the legality of the impound of her bus is firmly established both by statute and by controlling case law.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 19
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

RCW 46.55.120(2)(a) provides:

> The registered tow truck operator **shall give to each person who seeks to redeem an impounded vehicle**, or item of personal property registered or titled with the department, **written notice of the right of redemption and opportunity for a hearing which shall be accompanied by a form to be used for requesting a hearing**, the name of the person or agency authorizing the impound, and a copy of the towing and storage invoice. The registered tow truck operator shall maintain a record evidenced by the redeeming person's signature that such notification was provided.

(Emphasis added). In violation of this statute, Lincoln's employees repeatedly refused to give Horner the form she needed to request an impound hearing. With the assistance of her attorney, Horner eventually obtained a copy of the form by downloading it from the website maintained by the Washington Department of Licensing. *Horner Decl.,* ¶41.

RCW 46.55.(2)(b) further provides that the municipal court has jurisdiction to determine all issues pertaining to impoundments:

> Any person seeking to redeem an impound vehicle under this section has a right to a hearing in the district or municipal court for the jurisdiction in which the vehicle was impounded to contest the validity of the impoundment of the amount of towing and storage charges.… The municipal court has jurisdiction to determine the issues involving impoundments authorized by agents of the municipality….

While Lincoln's employees repeatedly told Horner that she had no right to the hearing request form because she was not the registered owner of the bus, RCW 46.55.120(2)(b) does not limit the rights it confers to registered owners. "*Any person* seeking to redeem an impounded vehicle" has the right to a hearing. (Italics added). Moreover, subsection (a) specifically identifies eight separate classes of people who have the right to seek to redeem an impounded vehicle, and Horner fell within *two* of the eight identified classes since she was both "[t]he legal owner" (subsection (1)(a)(i)) and "[a] person authorized in writing by the registered owner") (subsection (1)(a)(iii)).

Horner was not only statutorily entitled to a post-impoundment hearing, she was constitutionally entitled to such a hearing within less than five days. In *Stypmann v. City and*

*County of San Francisco,* 557 F.2d 1338, 1341 (9th Cir. 1977), a plaintiff class of indigent vehicle owners whose vehicles had been impounded, and who were "financially unable to redeem [their] vehicle[s] from storage" by immediately paying all towage fees challenged San Francisco's ordinance on procedural due process grounds. The challenged law guaranteed them a hearing within five days of the seizure of their vehicle. The Ninth Circuit held that this was not sufficient to satisfy due process and that the plaintiffs were entitled to a post-impoundment hearing within *less* than five days. *Id.* at 1344.

The *Stypmann* Court recognized that "[t]he private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed." *Id.* at 1342-43. Obviously, this observation is even more compelling when the person is unhoused and is living in the vehicle. The court also recognized that the City also had a considerable interest in removing vehicles from streets and highways under some circumstances, and in recovering payment for the cost of their removal, "[b]ut neither of these interests is at stake." *Id.*

"The only government interest at stake is that of avoiding the inconvenience and expense of a reasonably prompt hearing to establish probable cause for continued detention of the vehicle." *Id.* But these interests were held insufficient to justify a delay of even five days:

> An early hearing, on the other hand, would provide vehicle owners the opportunity to test the factual basis of the tow and thus protect them against erroneous deprivation of the use of their vehicles. The only state interest adversely affected by requiring an early hearing avoidance of the administrative burden and expense is not enough in these circumstances to warrant denying such a hearing.

*Id.* at 1344. The Court unambiguously held: "A five day delay in justifying detention of a private vehicle is too long. Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle." *Id.* at 1344.

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

*Stypmann* controls this case. Here the delay in providing a hearing was nearly seven months, and there was a nearly two month delay between impoundment and the date when the bus was released to Horner. If five days is constitutionally excessive than 55 days is an egregiously constitutionally impermissible delay. Here, under *Stypmann*, there can be no genuine material dispute that there was a violation of procedural due process and consequently this Court should grant Horner's motion for partial summary judgment on this claim, leaving solely the issue of damages for trial.

## V.    CONCLUSION

For the reasons stated above, Plaintiff Horner asks this Court to grant her motion for partial summary judgment by finding that as a matter of law, she has established the defendants' liability for the tort of conversion, and for violation of the Fourteenth Amendment Due Process Clause, the Fourth Amendment prohibition against unreasonable seizures, and the Washington Constitution, art. 1, §7 prohibition against the unjustified invasion of private affairs.

DATED this 27th day of December 2024.

    *s/James E. Lobsenz*
James E. Lobsenz WSBA #8787
lobsenz@carneylaw.com
CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104

    *s/Fadi M. Assaf*
Fadi M. Assaf WSBA #53687
fadi.assaf@nwjustice.org
NORTHWEST JUSTICE PROJECT
401 2nd Ave S., Suite 407
Seattle, WA 98104
206-707-0852

*Attorneys for Plaintiff*

I certify that this memorandum contains 7,409 words, in compliance with the Local Civil Rules.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – 22
(2:24-cv-01488-RSL)

PB-0011 7816846

CARNEY BADLEY SPELLMAN, P.S.
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of December, 2024, I electronically filed the foregoing **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys Defendants City of Seattle and Robert Strozier**
Joseph Everett, Assistant City Attorney
Dallas LePierre, Assistant City Attorney
Carson W. Canonie, Assistant City Attorney
Civil Division, Seattle City Attorney's Office
701 5th Avenue Suite 2050
Seattle WA  98104
Joseph.Everett@seattle.gov
Dallas.LePierre@seattle.gov
Carson.Canonie@seattle.gov

**Attorneys for Defendant Lincoln Towing, Inc.**
Daniel P. Mallove
LAW OFFICE OF DANIEL P. MALLOVE, PLLC
2003 Western Avenue, Suite 400
Seattle, WA  98121
dmallove@dpmlaw.com


DATED this 27th day of December, 2024.


_s/ Deborah A. Groth_
Legal Assistant

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT – 23
(2:24-cv-01488-RSL)

PB-0011 7816846

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020