UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHANEL HORNER,

               Plaintiff,

      v.

CITY OF SEATTLE; OFFICER ROBERT
STROZIER; and LINCOLN TOWING
ENTERPRISES, INC.,

               Defendants.

CASE NO. 2:24-cv-01488-RSL

ORDER GRANTING MOTION TO
DISMISS

This matter comes before the Court on the motion to dismiss filed by defendants City of Seattle and Officer Robert Strozier (Dkt. # 17); plaintiff Chanel Horner's response (Dkt. # 22); and the reply filed by defendants City of Seattle and Officer Robert Strozier (Dkt. # 30). Having reviewed the motions and related declarations (Dkts. # 23, # 24), as well as the record herein, the Court GRANTS the motion to dismiss as explained below.[1]

### I.    Background

Plaintiff Chanel Horner's complaint alleges the following facts: In September 2022, plaintiff was "unemployed, financially destitute, and . . . living in her vehicle, a bus." Dkt.

---

[1] Defendant Lincoln Towing Enterprises, Inc. has not filed a motion to dismiss. Therefore, none of plaintiff's claims are dismissed as to Lincoln Towing.

ORDER GRANTING MOTION TO DISMISS - 1

# 1-2 at ¶¶ 15–16. Plaintiff's bus runs only on natural gas. *Id*. at ¶ 17. "In late August or early September of 2022, Horner learned that on September 15, 2022, the City of Seattle intended to do a sweep of all vehicles parked on the 5000 block of Colorado Avenue South, in Seattle, Washington." *Id*. at ¶ 20. Plaintiff was living on that block, in her bus, during the first half of Sept. 2022 and intended to move her bus prior to the City of Seattle's "sweep" on Sept. 15, 2022. *Id*. at ¶¶ 22–23. However, on the evening of Sept. 14, 2022, plaintiff discovered that her bus had run out of natural gas. *Id*. at ¶ 24.

Early in the morning of Sept. 15, 2022, plaintiff contacted an organization that helps unhoused individuals and asked for help. *Id*. at ¶ 25. The organization, known as REACH, agreed to send a tow truck to pick up plaintiff's bus and take it to a nearby compressed natural gas station. *Id*. at ¶¶ 25–26. Delivery of compressed natural gas "was not possible." *Id*. Meanwhile, a Seattle Police Department Parking Enforcement Officer, Robert Strozier, "told Horner that a city tow truck was on the way and that if it got there before the private tow truck, the city tow truck was going to tow her bus away." *Id*. at ¶ 29.

Lincoln Towing is under contract with the City of Seattle to provide vehicle towing services and is "an agent of the City of Seattle." *Id*. at ¶ 8. Before any private tow truck arrived, a tow truck from Lincoln Towing arrived. *Id*. at ¶ 23.

> When the Lincoln Towing tow truck arrived, Horner asked Strozier if he could simply wait for a private tow truck to arrive, or, if he could not do that, if he would direct Lincoln Towing to tow the bus to the nearby compressed gas station. Strozier refused both requests saying that Lincoln Towing had to tow it and that it had to be towed to a Lincoln Towing impound lot.

ORDER GRANTING MOTION TO DISMISS - 2

*Id*. Lincoln Towing impounded plaintiff's bus and towed it away "[a]t the direction of Officer Strozier." *Id*. at ¶ 33.

Plaintiff visited three Lincoln Towing impound lots later that day in an effort to get her bus back. *Id*. at ¶ 34. At the first one, plaintiff's bus was not there and, when plaintiff asked how she could request a hearing to contest the impound, she was told "by a Lincoln Towing employee" that it was too late in the day to do that and the employee did not know how plaintiff could make a hearing request. *Id*. at ¶¶ 35–36. At the second lot, a Lincoln Towing employee told plaintiff that "she did not have a fax machine and could not submit a request for an expedited hearing." *Id*. at ¶ 37. At the third lot, plaintiff found her bus and "was told that she could not make any request for an impound hearing because she was not the registered owner of the vehicle." *Id*. at ¶ 38.

"Despite Defendants City's and Lincoln Towing's insistence that she was not entitled to any judicial hearing to review the lawfulness of the seizure and impound of her bus, Horner eventually succeeded in obtaining an impound hearing in Seattle Municipal Court." *Id*. at ¶ 48. That hearing occurred on April 11, 2023, about seven months after the impound. *Id*. at ¶ 49. By then, plaintiff's bus had already been returned to plaintiff, having been released to her by Lincoln Towing on Nov. 9, 2022, about two months after the impound, at the request of plaintiff's attorney. *Id*. at ¶ 39. "When the bus was returned to her, Horner discovered that many items of

ORDER GRANTING MOTION TO DISMISS - 3

her property had been stolen" and "the bus had been damaged." *Id*. at ¶¶ 42–47. At the April 11, 2023 impound hearing:

> [T]he judge ruled that the impound of Horner's bus had been "improper." . . . The court ruled that Officer Strozier "did not consider reasonable alternatives" to an impound, as required by the U.S. Constitution, the Washington State Constitution, and decisions of the Washington Supreme Court. The Court also ruled that a reasonable alternative was in fact "actually available." Consequently, the court ruled "that the impound was improper and unlawful."

*Id*. at ¶¶ 50 – 51.

The record before the Court shows that plaintiff filed suit in King County Superior Court on Sept. 9, 2024, claiming, in ten separate causes of action, that defendants' impoundment of plaintiff's bus violated Washington State law and deprived plaintiff of her federal and state constitutional rights. Dkt. # 1-2. Plaintiff's lawsuit also sought to "permanently enjoin Defendants from impounding vehicles when a reasonable alternative to impound exists as required under the Washington State and U.S. Constitutions, except as under such conditions as the Court may require." *Id*. Plaintiff's case was removed to this Court on Sept. 18, 2024. Dkt. # 1.

## II.    Discussion

### A.  Pleading Standard Under Fed. R. Civ. P. 12(b)(6)

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light

ORDER GRANTING MOTION TO DISMISS - 4

most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). In addition, the factual allegations in a complaint "must be enough to rise above the speculative level." *Twombly*, 550 U.S. 544 at 555 (2007). Finally, dismissal under Rule 12(b)(6) is proper "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

ORDER GRANTING MOTION TO DISMISS - 5

## B. First Cause of Action: Conversion

The parties' disagreement over this claim is not whether the claim rests on sufficient facts, but instead whether the claim fails as a matter of law. Dkts. # 17 at 11:7; # 22 at 9:21; # 30 at 4:14. Plaintiff claims that by impounding her bus, defendants City of Seattle and Robert Strozier "committed the tort of conversion by unjustifiably and willfully interfering with Plaintiff's possession of her property." Dkt. # 1-2 at 7:23. Defendants argue that because the impoundment of plaintiff's bus was authorized under Seattle Municipal Code 11.30.60, the impoundment was lawful and therefore cannot constitute conversion. Dkt. # 30 at 6:5–8. *See also Judkins v. Sadler-Mac Neil*, 61 Wash. 2d 1, 3 (1962) ("A conversion is the act of wifully interferring [sic] with any chattel, *without lawful justification*, whereby any person entitled thereto is deprived of the possession of it.") (emphasis added).

Plaintiff's argument in support of the conversion claim centers on a Seattle Municipal Court judge's finding that while plaintiff "committed" the parking infraction that triggered the impoundment of her bus under SMC 11.30.60A, the impoundment of plaintiff's bus was unreasonable. Dkts. # 22 at 10:5; # 23 at 126–127. Plaintiff then argues that "binding Washington precedent . . . holds that if an impound is *un*reasonable then it is *per se* unconstitutional." Dkt. # 22 at 10:14–15. Put another way, the legal theory behind plaintiff's conversion claim is that "the municipal court's finding of unreasonableness automatically established that the impound of Horner's bus was unlawful because it did not comport with [Washington State] constitutional guarantees" (specifically Wash. Const.

ORDER GRANTING MOTION TO DISMISS - 6

art 1, § 7, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law"). *Id*. at 11:12–16. Therefore, "[s]ince the impound was determined to be unlawful, automatically it was also an actionable conversion." *Id*. *See also* Dkt. # 23 at 123–127 (Seattle Municipal Court judge citing *City of Seattle v. Long*, 198 Wash.2d 136 (2021) and *State v. Villela*, 194 Wash.2d 451 (2019)).[2]

In *Long*, the Washington State Supreme Court considered the City of Seattle's 2016 impoundment, also under SMC 11.30.60, of a truck that Steven Gregory Long was living in at the time of the impoundment. 198 Wash.2d 136 at 142–3, 156 (2021). In *Long*, as here, plaintiff did not question the constitutionality of SMC 11.30.60 or the lawfulness of the impound under the terms of SMC 11.30.60. Instead, Mr. Long, like petitioner here, challenged "the city's failure to consider alternatives to impoundment." *Id*. at 156. SMC 11.30.60 does not require the consideration of alternatives to impoundment. But Mr. Long, like petitioner here, alleged that the failure to consider alternatives to impoundment in the course of the impound made the impound an unreasonable seizure under Wash. Const. art 1, § 7. In other words, Mr. Long, like petitioner here, argued that a violation of Wash Const. art 1, § 7 during the process of impoundment can retroactively make an impoundment under SMC 11.30.60 unlawful.[3]

---

[2] The transcript of the Seattle Municipal Court hearing that is offered by plaintiff at Dkt. # 23 is incorporated into plaintiff's complaint by reference. Fed. R. Civ. P. 10(c); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[3] The lead attorney for petitioner in this matter was also the lead attorney in *Long*.

ORDER GRANTING MOTION TO DISMISS - 7

The *Long* court described a two-step process for determining whether Wash. Const. art 1, § 7 has been violated. *Id*. at 156. "First, we determine whether the action complained of disturbs one's private affairs." *Id*. Where, as here and in *Long*, the action does disturb a person's private affairs, "we look to a second inquiry: whether authority of law justifies the intrusion." *Id*. "Most relevant to this case," the *Long* court stated, "a vehicle may be lawfully impounded in the course of enforcing traffic regulations if the driver committed a traffic offense for which the legislature has expressly authorized impoundment." *Id*. at 156 (citing *Villela*, 194 Wash.2d 451 at 459 (2019)). The *Long* court further stated that where "no probable cause exists to seize the vehicle *and* a reasonable alternative to impoundment exists, it is unreasonable to impound the vehicle." *Id*. at 157 (citing *Villela*, 194 Wash.2d 451 at 459 (2019) (emphasis added). *Villela*, in turn, makes clear that "enforcing traffic regulations if the driver committed a traffic offense for which the legislature has expressly authorized impoundment" is equivalent to having probable cause, in the sense that both independently allow a vehicle to be "lawfully impounded." 194 Wash.2d 451 at 459 (2019). Applying the holdings of *Long* and *Villela* to the facts of this case, where petitioner does not contest the constitutionality of SMC 11.30.60 or the commission of the traffic offense that triggered impoundment of her bus under SMC 11.30.60, the Court finds that petitioner's bus was "lawfully impounded" and that "authority of law justifie[d] the intrusion" into petitioner's rights under Wash. Const. art. 1, § 7.[4] *Long*, 198 Wash.2d 136

---

[4] Petitioner and defendants disagree as to whether lawfulness and reasonableness are "separate" inquiries in the context of a vehicle impound. *See* Dkts. # 17 at 13:3; # 22 at 12. But in arguing that lawfulness and reasonableness are not "separate" inquiries, and that unreasonableness under Wash. Const. art. 1, § 7 "automatically" establishes the

ORDER GRANTING MOTION TO DISMISS - 8

at 156 (2021) (citing *Villela*, 194 Wash.2d 451 at 459 (2019)). To the extent that the Seattle Municipal Court judge in this matter viewed the holdings of *Long* and *Villela* differently, that view is not binding on this Court on a motion to dismiss arising out of the present complaint.[5][6] Given this Court's finding that the impound here was lawful, plaintiff cannot pursue a conversion claim. *Id*. *See also Potter v. Washington State Patrol*, 165 Wash.2d 67, 75, 69 (2008) (conversion claim allowed for *un*lawful impound where state impound policy "exceeded the agency's statutory authority"); *Est. of Rogers by & through*

---

*un*lawfulness of an otherwise lawful impound, petitioner incompletely quotes *Villela*. Dkt. # 22 at 10:14–16. Petitioner presents the "binding" holding of *Villela* as being that if "a reasonable alternative to impound exists, then it is unreasonable to impound a citizen's vehicle." *Id*. In fact, the full sentence from *Villela* reads as follows: "However, if there is no probable cause to seize the vehicle and a reasonable alternative to impound exists, then it is unreasonable to impound a citizen's vehicle." 194 Wash.2d 451 at 459 (2019) (quoting *State v. Tyler*, 177 Wash.2d 690, 698 (2013)). The full sentence shows *Villela* is contrasting situations in which "there is no probable cause" with *Villela*'s immediately preceding discussion of situations in which "[a] vehicle may be lawfully impounded"—including "in the course of enforcing traffic regulations if the driver committed a traffic offense for which the legislature has expressly authorized impoundment." *Id*. The *Long* court restated this holding. 198 Wash.2d 136 at 157 (2021) (citing *Villela*, 194 Wash.2d 451 at 459 (2019)). Therefore, the issue here is not whether lawfulness and reasonableness are *separate* inquiries. The issue here is that under *Long* and *Villela*, the reasonableness inquiry only comes up "if there is no probable cause to seize the vehicle." 198 Wash.2d 136 at 157 (2021); 194 Wash.2d 451 at 459 (2019). As already discussed, *Villela* makes clear that "enforcing traffic regulations" that result in an impound is like having probable cause in the criminal context, in that both scenarios allow the vehicle to be "lawfully impounded" without considering whether "a reasonable alternative to impoundment exists." 194 Wash.2d 451 at 459 (2019) (quoting *State v. Tyler*, 177 Wash.2d 690, 698 (2013)).

[5] Plaintiff is incorrect that in this proceeding the Court must take as true "the municipal court's determination that the impoundment was unreasonable." Dkt. # 22 at 10:5–6. Plaintiff is also incorrect that defendants conceded as much. *Id*. What defendants actually stated is correct: "At this stage the Court must take as true that the Municipal Court found the impoundment of Plaintiff's vehicle to be unreasonable . . . ." Dkt. # 17 at 13:5–6. The fact of the municipal court's finding does not constrain this Court's independent judgment as to whether plaintiff has presented a cognizable legal theory for the conversion claim presented in this matter. *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

[6] Contrary to plaintiff's contention, the doctrine of collateral estoppel is not relevant here. *See* Dkt. # 22 at 4 n.3 (arguing that "[t]he municipal court's determination that the impound was unlawful cannot be relitigated in this court."). As discussed above, the issue here is whether plaintiff committed a traffic offense for which a legislative body "expressly authorized impoundment." *Long*, 198 Wash.2d 136 at 156 (2021) (citing *Villela*, 194 Wash.2d 451 at 459 (2019)). If so, plaintiff's bus was "lawfully impounded." *Id*. The Seattle Municipal Court judge found plaintiff "committed" the underlying violation of SMC 11.72.330 that triggered the impound of plaintiff's bus under SMC 11.30.60A. Dkt. # 23 at 126–127. That decision by the Seattle Municipal Court judge is not being relitigated here, making the doctrine of collateral estoppel irrelevant to this Court's analysis of plaintiff's first cause of action.

ORDER GRANTING MOTION TO DISMISS - 9

*Cullen v. State*, 200 Wash. App. 1066, *5 (2017) (conversion claim not allowed where impound pursuant to unchallenged state statute "was lawful.").

The legal theory behind plaintiff's conversion claim therefore fails because, contrary to plaintiff's argument, any unreasonableness in the impoundment of plaintiff's bus does not "automatically" establish that the impoundment was unlawful in these circumstances, where "authority of law justifie[d] the intrusion" into petitioner's rights under Wash. Const. art. 1, § 7. Dkt. # 22 at11:12–16. *See also Long*, 198 Wash.2d 136 at 156 (2021) (citing *Villela*, 194 Wash.2d 451 at 459 (2019)); SMC 11.30.60. As a result, the Court will dismiss plaintiff's conversion claim because it lacks a "cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

**C. Second and Third Causes of Action: Deprivation of Right to be Free from Warrantless and Unreasonable Seizures Under the Fourth Amendment**

Although plaintiff's complaint does not state that her claimed violations of the United States Constitution are brought under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), plaintiff's response to defendants' motion to dismiss appears to confirm that plaintiff is bringing *Monell* claims under Section 1983. *See* Dkts. #1; # 17 at 14; # 22 at 21:13–14. Therefore, the Court will analyze plaintiff's second and third causes of action, as well as plaintiff's other claims of federal constitutional violations, as being brought under Section 1983 and *Monell*, 436 U.S. 658 (1978).

ORDER GRANTING MOTION TO DISMISS - 10

Cities may be held liable under § 1983 for constitutional violations committed by their officers. *See Monell*, 436 U.S. at 694, 98 S.Ct. 2018. To establish such liability, Plaintiffs must prove "(1) [they were] deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [their] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). A municipal policy can be, among other things, "a failure to train [or] supervise." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

*Jones v. City of N. Las Vegas*, 150 F.4th 1030, 1039 (9th Cir. 2025). On the second and third causes of action, plaintiff contends that defendants "deprived Plaintiff of her Fourth Amendment right" to be free from warrantless and unreasonable seizures "by seizing her vehicular home." Dkt. # 1-2 at 8.

### 1. The City of Seattle's Policy or Lack Thereof

Defendants argue that these and all of plaintiff's other claims of federal constitutional violations must be dismissed as a matter of law as to the City of Seattle "because there is not a single allegation contained in the complaint that Officer's Strozier's decision to impound Plaintiff's vehicle was performed pursuant to an unconstitutional City policy, and there is no allegation that the City made a deliberate or conscious choice not to train its officers." Dkt. # 30 at 13:17–20. *See also Jones*, 150 F.4th 1030 at 1039 (9th Cir. 2025). While there is no question that the impound of plaintiff's bus constituted a seizure "within the meaning of the Fourth Amendment," *Miranda v. City of Cornelius*, 429 F.3d 858, 863 (9th Cir. 2005), upon review of plaintiff's complaint, the Court agrees with defendants that the complaint lacks any allegation that the impound was performed pursuant to a

ORDER GRANTING MOTION TO DISMISS - 11

City of Seattle policy or was caused by a lack of City of Seattle policy. Dkt. # 1-2. "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. County of Los Angeles,* 797 F.2d 743, 747 (9th Cir.1986)). Here, even in places in plaintiff's complaint where an allegation of that sort would logically arise (such as Dkt. # 1-2 at ¶¶ 29, 31, 32), the complaint does not include any allegation, bare or otherwise, that Officer Strozier's challenged actions conformed to a City of Seattle policy, custom, or practice—or were caused by the lack of a policy. Dkt. # 1-2. Plaintiff does offer some allegations concerning City of Seattle policy in her response to the present motion to dismiss, stating that testimony at the impound hearing showed "the City did *not* have a standardized or uniform policy of refusing to wait past 9 a.m. for a privately arranged tow truck to arrive," Dkt. # 22 at 15:13–15, and that Seattle's failure to have a policy to guide officer discretion as to when to impound a vehicle "violated Horner's Fourth Amendment rights" because "[i]f Seattle had had a similar policy, then presumably Officer Strozier would have followed it and no violation of the Fourth Amendment would ever have occurred," Dkt. # 22 at 21:1–12. But in plaintiff's complaint there is no similar argument, much less any "bare allegation" along these lines. *Karim-Panahi*, 839 F.2d 621 at 624 (9th Cir. 1988). On a motion to dismiss, the Court's

ORDER GRANTING MOTION TO DISMISS - 12

review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). Therefore, as to the City of Seattle the Court will dismiss plaintiff's second and third causes of action as a matter of law. *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

## 2. Qualified Immunity

As to Officer Strozier, defendants argue that plaintiff's claims of warrantless and unreasonable seizure, and all of plaintiff's other claims of federal constitutional violations, must be dismissed under the doctrine of qualified immunity. Dkt. # 17 at 21:13. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Martinez v. City of Clovis*, 943 F.3d 1260, 1274–75 (9th Cir. 2019).

> [O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards,* 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was " 'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful. *al–Kidd, supra,* at 741, 131 S.Ct. 2074 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *al–Kidd, supra,* at 741, 131 S.Ct. 2074. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018). Here, plaintiff argues that the applicable Fourth Amendment principles were clearly established at the time Officer Strozier

ORDER GRANTING MOTION TO DISMISS - 13

impounded plaintiff's bus. Dkt. # 22 at 19:1. Further, plaintiff argues that "Seattle has clearly been aware of these principles since the *Price* district court denied its motion for summary judgment in a class action case challenging car impounds nearly 20 years ago." *Id.* at 19:22–25 (citing *Price v. City of Seattle*, No. C03-1365P, 2005 WL 1189585, at *2, 4 (W.D. Wash. Mar. 1, 2005)).

The relevant holding of *Price* does not support plaintiff's argument that the unlawfulness of Officer Strozier's conduct in impounding plaintiff's bus was clearly established.

> The decision to impound a car "must meet the strictures of the Fourth Amendment," which requires that the impound must be reasonable. *U.S. v. Duguay,* 93 F.3d 346, 351 (7th Cir.1996). Outside of criminal investigations, the police may reasonably impound a car when necessary for "community caretaking" purposes, such as protecting public safety and providing for the efficient movement of traffic if the car is creating a traffic hazzard or to prevent theft of abandoned cars. "The authority of the police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman,* 428 U.S. 364, 368-69, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

*Price*, No. C03-1365P, 2005 WL 1189585, at *2 (W.D. Wash. Mar. 1, 2005). Plaintiff's bus was parked on a public street, "the 5000 block of Colorado Avenue South, in Seattle, Washington." Dkt. # 1-2 at ¶¶ 20, 22. Attached to plaintiff's complaint is a Seattle Municipal Court judgment from plaintiff's April 11, 2023, impound hearing finding that plaintiff committed the underlying violation of SMC 11.72.330 (parking in violation of posted signs) that triggered the impound of plaintiff's bus under SMC 11.30.60A. Dkt. # 1-2 at 14. *See also* Dkt. # 23 at 126–

ORDER GRANTING MOTION TO DISMISS - 14

127. Plaintiff's complaint does not contest that her bus was parked in violation of posted signs. Dkt. # 1-2. As *Price* stated, "The authority of the police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." No. C03-1365P, 2005 WL 1189585, at *2 (W.D. Wash. Mar. 1, 2005) (citing *South Dakota v. Opperman,* 428 U.S. 364, 368-69 (1976)).

It is true that "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions," and that under the "community caretaking" exception, the fact that an impoundment was conducted pursuant to a city ordinance "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment . . . ." *Miranda*, 429 F.3d 858 at 862, 864 (9th Cir. 2005). Based on this, plaintiff argues that Officer Strozier's conduct was unreasonable in that Officer Strozier "refused to wait" for the arrival of a tow truck hired by a third party. Dkt. # 1-2 at 2:23.[7] However, plaintiff's complaint also alleges that Officer Strozier suggested that if the privately hired tow truck got there before the city-contracted

---

[7] Plaintiff's claim that defendants City of Seattle and Officer Strozier also engaged in an "unreasonably prolonged seizure" by holding plaintiff's vehicle for fifty-five days after the impoundment, Dkt. # 22 at 18, fails because the facts plausibly alleged by plaintiff only support the reasonable inference that Lincoln Towing held plaintiff's vehicle for fifty-five days after the impoundment. Plaintiff has not plausibly alleged any non-conclusory facts that would support a reasonable inference that the City of Seattle or Officer Strozier were participants in the decision to hold plaintiff's vehicle at Lincoln Towing's impound lot for fifty-five days after impoundment. Dkt. # 1-2. Therefore, as to the claim of "unreasonably prolonged seizure" against defendants City of Seattle and Officer Strozier, plaintiff has not sufficiently alleged an actual violation of a constitutional right under either the *Monell* test or the qualified immunity test. *See Monell*, 436 U.S. 658, 694 (1978); *Wesby*, 583 U.S. 48, 62–63 (2018).

ORDER GRANTING MOTION TO DISMISS - 15

tow truck, then the privately hired tow truck could take plaintiff's bus. *Id*. at ¶ 29. In the end, the city-contracted tow truck arrived first and Officer Strozier chose not to wait for the privately hired tow truck. *Id*. at ¶¶ 32, 33. Thus, the particular circumstances of this case involve a specific question concerning reasonableness: *When (1) a vehicle that a person is living in is parked in violation of a city traffic regulation, (2) impoundment of that vehicle is a legal consequence of violating the city traffic regulation, and (3) the person living in the vehicle states that a tow truck hired by a third party is coming at some point in the future, is it unreasonable for a city parking enforcement officer to decline to wait for the privately hired tow truck to arrive before impounding the vehicle?* The cases cited by plaintiff do not answer this specific question, and they certainly do not establish a legal principal that "clearly prohibit[ed] the officer's conduct in the particular circumstances before him." *Wesby*, 583 U.S. 48 at 63 (2018). *See* Dkt. # 30 at 11:16–12:4.

In *Miranda*, the court found that under the "special circumstances" of that case, which involved a car parked in its owner's driveway, the power to seize vehicles under the "community caretaking" doctrine did not apply. 429 F.3d 858 at 860 (9th Cir. 2005). But here, unlike *Miranda*, plaintiff's bus was parked on a public street in violation of the Seattle Municipal Code. Dkt. # 1-2 at ¶¶ 20, 22. *See also* Dkt. # 23 at 126–127. As the *Miranda* court made clear, where the purpose of an impoundment is to "remove a vehicle left in a public location where it creates a hazard," that impoundment it proper. *Id*. at 865 n.6. *See also id*. at 864 ("In their

ORDER GRANTING MOTION TO DISMISS - 16

'community caretaking' function, police officers may impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic.'") (citing *Opperman*, 428 U.S. 364, 368–69 (1976)). *Accord U.S. v. Cervantes*, 703 F.3d 1135, 1142 (9th Cir. 2012). On the reasonableness issue, in *Colorado v. Bertine* the Court made clear that in the Fourth Amendment context, the reasonableness of a government activity "does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." 479 U.S. 367, 374 (1987) (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)). The *Mirdanda* court restated that particular holding from *Bertine* as follows: "An officer, acting within the scope of his or her community care-taking function, is not required to consider 'the existence of alternative less intrusive means' when the vehicle must in fact be moved to avoid the creation of a hazard or the continued unlawful operation of the vehicle." 429 F.3d 858 at 865 n.6 (9th Cir. 2005). Plaintiff argues that here, the reasonableness of the impoundment of plaintiff's bus should indeed turn on the existence of alternative, less-intrusive means. Dkt. # 22 at 13:23–14:3.

> The facts plead [sic] here show that if Officer Strozier had simply agreed to wait for the privately arranged tow truck, the private tow would have arrived and Horner's bus would have been removed from the street block to be cleaned long before Strozier's regular shift ended. Thus, Strozier's insistence on impounding Horner's bus served no conceivable purpose and therefore it violated the Fourth Amendment.

*Id*. Plaintiff's argument thus returns us to the specific question raised by the particular circumstances of this case: *When (1) a vehicle that a person is living in is*

ORDER GRANTING MOTION TO DISMISS - 17

*parked in violation of a city traffic regulation, (2) impoundment of that vehicle is a legal consequence of violating the city traffic regulation, and (3) the person living in the vehicle states that a tow truck hired by a third party is coming at some point in the future, is it unreasonable for a city parking enforcement officer to decline to wait for the privately hired tow truck to arrive before impounding the vehicle?*

Without minimizing the importance of that question, the Court finds that the answer is not, and was not at the time, "clearly established" by any caselaw cited by plaintiff. *Wesby*, 583 U.S. 48 at 63–64 (2018). What was—and is—clearly established is that where an officer is impounding a vehicle pursuant to law and a reasonable belief that the vehicle poses a hazard, that officer is not required to consider alternative, less-intrusive means to impoundment (including the alternative means available here: waiting for the arrival of a private tow truck hired by a third party). *Miranda*, 429 F.3d 858 at 865 n.6 (9th Cir. 2005). Therefore, as a matter of law, Officer Strozier is entitled to qualified immunity on plaintiff's second and third causes of action, and as a result plaintiff's second and third causes of action will be dismissed as to Officer Strozier. *Wesby*, 583 U.S. 48 at 63–64 (2018); *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001). Below, the Court will analyze the additional claims of qualified immunity in the context of other causes of action.

### D.  Fourth Cause of Action: Wash. Const. art. 1, § 7

"Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative

legislation [.]' *Blinka v. Washington State Bar Ass'n*, 109 Wash. App. 575, 591 (2001). In plaintiff's response, she makes clear that this cause of action under Wash. Const. art. 1, § 7 is intertwined with her first cause of action, the conversion claim. Dkt. # 22 at 24:20. For the reasons explained *supra* (II.B), the Court will be dismissing plaintiff's conversion claim. Plaintiff has provided no argument or authority in support of this Court creating a cause of action based upon violations of Wash. Const. art. 1, § 7, and in any event invitations of that sort have been "consistently rejected" by Washington State courts. *Blinka*, 109 Wash. App. 575 at 591 (2001). Therefore, the Court will dismiss plaintiff's fourth cause of action because it lacks a "cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

### E.  Fifth Cause of Action: Deprivation of Eighth Amendment Right to be Free from Excessive Fines

Plaintiff claims that defendants "violated Plaintiff's Eighth Amendment right to be free from Excessive Fines by impounding and withholding her home." Dkt. # 1-2 at 8. But Plaintiff does not plead that she was forced to pay any fine at all as a result of the impoundment. Dkt. # 1-2. *See U.S. v. Bajakajian*, 524 U.S. 321, 327–28 (1998) (fine means "payment to a sovereign as punishment for some offense."). Defendants state that "when Plaintiff prevailed at her impound hearing, she was no longer liable for the storage and towing fees, and the City assumed liability." Dkt. # 17 at 20:14–15. Plaintiff does not contest this. Dkt. # 22. *See also* Dkt. # 23 at 129 (Seattle Municipal Court judge waiving $47 payment owed by plaintiff). Thus, plaintiff has not demonstrated a violation of her

ORDER GRANTING MOTION TO DISMISS - 19

Eighth Amendment rights.[8] That means the issue of Officer Strozier's qualified immunity is moot as to this claim. *Wesby*, 583 U.S. 48, 62–63 (2018). Therefore, plaintiff's fifth cause of action will be dismissed with prejudice as to defendants City of Seattle and Officer Robert Strozier due to "an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

### F.  Sixth Cause of Action: Wash. Const. art. 1, § 14

Plaintiff claims that defendants "deprived Plaintiff of her article 1, section 14 right to be free from Excessive Fines by impounding and withholding her home." Dkt. # 1-2 at 8. Given that the language of Wash. Const. art. 1, § 14 "is identical to" the language of U.S. Const. amend. VIII, the Washington State Supreme Court has held that the two provisions are "coextensive for the purposes of excessive fines." *Long*, 198 Wash.2d 136 at 158–59 (2021). As the *Long* court further explained, the excessive fines clause "limits the government's power to extract payments." *Id*. (quoting *Austin v. United States*, 509 U.S. 602, 609-10 (1993). A qualifying fine is "a payment to a sovereign as punishment for some offense." *Id*. (quoting *Bajakajian*, 524 U.S. 321 at 327–28 (1998)). Thus, for the reasons already stated, *see supra* (II.E), plaintiff's sixth cause will be dismissed with prejudice as to defendants City of Seattle and Officer Robert Strozier due to "an absence of

---

[8] As to the City of Seattle, for the reasons discussed *supra* (II.C.1), plaintiff's allegation of an Eighth Amendment violation fails for an additional reason: plaintiff's complaint offers no allegation, "bare" or otherwise, that defendants' alleged violation of the Eighth Amendment occurred pursuant to a City of Seattle policy or was caused by a lack of City of Seattle policy. *Karim-Panahi*, 839 F.2d 621 at 624 (9th Cir. 1988); *Monell*, 436 U.S. 658 (1978).

ORDER GRANTING MOTION TO DISMISS - 20

sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

### G.   Seventh Cause of Action: Deprivation of State and Federal Constitutional Due Process

Plaintiff claims defendants City of Seattle and Lincoln Towing "violated Plaintiff's Fourteenth Amendment right to procedural due process by denying her a prompt post-seizure hearing which she was entitled to under both state and federal constitutional law." Dkt. # 1-2 at 9.

#### 1.   Federal Constitutional Due Process

As discussed *supra* (II.C.1), plaintiff's allegation of a violation of her federal constitutional due process rights fails because plaintiff's complaint offers no allegation, "bare" or otherwise, that defendants' alleged violation of her federal constitutional due process rights occurred pursuant to a City of Seattle policy or was caused by a lack of City of Seattle policy. *Karim-Panahi*, 839 F.2d 621 at 624 (9th Cir. 1988); *Monell*, 436 U.S. 658 (1978). Even so, the Court notes that plaintiff's complaint also contains no allegation that defendant City of Seattle told plaintiff she was not entitled to a prompt post-seizure hearing to challenge the impoundment of her vehicle—other than the complaint's merely conclusory description of "Defendant City's and Lincoln Towing's" alleged "insistence that she was not entitled to any judicial hearing . . . ." Dkt. #1-2 at ¶ 48. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Beyond that conclusory allegation, the complaint fails to otherwise allege that the City of Seattle caused plaintiff's post-

ORDER GRANTING MOTION TO DISMISS - 21

seizure hearing to occur seven months after plaintiff's vehicle was impounded. Dkt. # 1-2. The complaint does allege that two employees of defendant Lincoln Towing did not help plaintiff initiate a request for a hearing and that, at one Lincoln Towing impound lot, plaintiff was told she could not make a hearing request because she was not the registered owner of the vehicle. Dkt. # 1-2 at ¶¶ 36–38. The complaint also alleges that Lincoln Towing is the City of Seattle's "agent" for towing services, *id*. at ¶¶ 2, 8, but the complaint does not allege that Lincoln Towing is the City of Seattle's agent for the purpose of arranging post-seizure hearings. The Seattle Municipal Code provides for post-seizure hearings within two days of receipt of a written request. SMC 11.30.120.D. *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 584 F.3d 1232, 1237 (9th Cir. 2009) (enacting and publishing a statute is sufficient notice for the purposes of procedural due process) (citing *United States v. Locke*, 471 U.S. 84, 108 (1985)). Therefore, plaintiff's federal procedural due process claim against the City of Seattle fails under *Monell*, 436 U.S. 658 (1978); fails to breach Officer Strozier's qualified immunity under *Wesby*, 583 U.S. 48, 62–63 (2018); and shall be dismissed for lack of "sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

## 2. State Constitutional Due Process

"Washington's due process clause does not afford a broader due process protection than the Fourteenth Amendment." *In re Dyer*, 143 Wash. 2d 384, 394 (2001) (citing *State v. Ortiz*, 119 Wash.2d 294 (1992)). Plaintiff does not argue otherwise, nor does plaintiff offer any Washington State authorities in support of her state constitutional due process

claim. Dkt. # 22 at 21:15–22:6. Therefore, for the above-explained reasons concerning the factual allegations in plaintiff's complaint, *see supra* (II.G.1), plaintiff's state procedural due process claim fails for lack of "sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

Plaintiff's seventh cause of action is therefore dismissed as to defendants City of Seattle and Officer Strozier.

### H.  Eighth Cause of Action: Violation of Homestead Act

Plaintiff claims defendants City of Seattle and Lincoln Towing "violated the Washington Homestead Act by attaching her home as security for an impound debt and threatening a forced sale of her vehicle home in violation of the Washington Constitution, article XIX, § 1 and RCW 6.13.070." Dkt. # 1-2 at 9. While plaintiff's bus likely qualifies as a homestead under the facts pled in plaintiff's complaint, what triggers application of the Homestead Act is an attempt to collect on a debt. *Long*, 198 Wash.2d 136 at 147, 152 (2021) ("The homestead act operates as a shield to protect against creditors' actions; it is not a sword to prevent such actions in the first instance."). Here, as in *Long*, there is no allegation of an attempt to collect on a debt owed by plaintiff (nor could there be, since, as discussed above, plaintiff does not owe any debt). *Id*. *See also* Dkt. # 1-2. Nor do the facts pled in plaintiff's complaint plausibly allege an "attachment" that would trigger application of the Homestead Act. "Attachment" is "the physical 'seizing of . . . property to secure a judgment or to be sold in satisfaction of a judgment." *Long*, 198 Wash.2d 136 at 152 (2021) (quoting Blacks Law Dictionary 157 (11th ed. 2019)). Even taking as true

ORDER GRANTING MOTION TO DISMISS - 23

plaintiff's claim that the impoundment led to the attachment of plaintiff's home "as security for an impound debt," that attachment would have occurred *after* the impoundment, and thus could not be the *reason for* the impoundment. *See* Dkt. # 17 at 9:8–10. Thus, "the homestead act's protections do not apply" to plaintiff on the facts pled in her complaint. *Long*, 198 Wash.2d 136 at 152 (2021). Therefore, plaintiff's eighth cause will be dismissed with prejudice as to defendant City of Seattle due to "an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).[9]

### I.    Ninth Cause of Action: Consumer Protection Act

This claim was brought only against defendants City of Seattle and Lincoln Towing. Plaintiff, in her response, "acknowledges that the City of Seattle is not a 'person' for the purposes of the CPA and thus cannot be sued for violating the Act." Dkt. # 22 at 24:17–19. Therefore, the Court will grant defendant City of Seattle's motion to dismiss this claim with prejudice. *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

### J.    Tenth Cause of Action: Negligence

Plaintiff claims that when her vehicle was in the "sole possession" of defendants City of Seattle and Lincoln Towing, those defendants "negligently failed to exercise reasonable care to protect plaintiff's property from theft and damage, and that negligent failure was the proximate cause of the theft of her property and of damage to her

---

[9] In plaintiff's response she alleges some sort of conspiracy, perhaps to violate the Homestead Act or perhaps to violate a common law prohibition on damaging another person's business. Dkt. # 22 at 23:11–24:12. These causes of action do not appear in plaintiff's complaint, Dkt. # 1-2, and therefore will not be considered.

ORDER GRANTING MOTION TO DISMISS - 24

property." Dkt. #1-2 at 10. Setting aside the question of how the City of Seattle and Lincoln Towing could each be in "sole possession" of plaintiff's vehicle, Dkt. # 17 at 23:22–24:1, plaintiff's complaint does not state any facts that plausibly allege the City of Seattle was in "sole possession" of plaintiff's bus when the alleged theft and damage to plaintiff's bus occurred. *See* Dkt. # 1-2 at ¶¶ 32–47. Although plaintiff's complaint does allege that Lincoln Towing "contracts with the City of Seattle to provide vehicle towing services, and is an agent of the City of Seattle," Dkt. # 1-2 at ¶ 8, the complaint does not allege that Lincoln Towing was acting as the City of Seattle's agent during the time plaintiff's bus was being held at Lincoln Towing's impound lot. Plaintiff's response to the motion to dismiss makes no agency argument at all as it relates to negligence. Dkt. # 22 at 22:7–23:2. In addition, plaintiff's contention that the City of Seattle was in sole possession of her bus under the theory of "constructive bailment," Dkt. # 22 at 22–23, cites no Washington State law and instead relies solely on out-of-state decisions from state courts in Illinois, South Carolina, and Florida. Those out-of-state decisions do not support plaintiff's argument that under the particular facts of this case the City of Seattle is a constructive bailee.[10] Thus, although plaintiff argues that these out-of-state authorities

---

[10] *See Am. Ambassador Cas. Co. v. City of Chicago*, 205 Ill. App. 3d 879, 882–83 (1990) (finding the City of Chicago was a constructive bailee where the Chicago Police Department impounded a car, kept the car under its "exclusive control" *at the police department's impound lot*, and during that time the car was "*stolen from the department's lot*.") (italics added); *Hadfield v. Gilchrist*, 343 S.C. 88, 102 (Ct. App. 2000) (finding that a tow company operator, not the City of Charleston, was a constructive bailee where his towing company, acting pursuant to a City of Charleston ordinance, impounded plaintiff's car); *People v. Andrews*, 6 Cal. App. 3d 428, 433 (Ct. App. 1970) (stating, in regard to the validity of inventory searches, that upon the impoundment of a vehicle the police "undoubtedly become 'an involuntary bailee of the property and responsible for the vehicle and its contents,'" but not discussing a factual scenario similar to the one alleged here).

ORDER GRANTING MOTION TO DISMISS - 25

show that police "and/or" a private towing company can become constructive bailees, Dkt. # 22 at 22:19–23:2, when applied to the facts of this case none of plaintiff's out-of-state authorities actually supports the police "and" a private towing company proposition. Therefore, plaintiff's tenth cause of action will be dismissed as to defendant City of Seattle. *Navarro*, 250 F.3d 729 at 732 (9th Cir. 2001).

### K. Eleventh Cause of Action: Request for Permanent Injunction

Plaintiff requests that this Court permanently enjoin the City of Seattle and Lincoln Towing from engaging in the rights violations alleged in the above causes of action. Because causes of action one through ten have already been dismissed, this cause of action will be dismissed as well.

### III.    Conclusion

For all the foregoing reasons, the Court GRANTS the motion to dismiss filed by defendants City of Seattle and Officer Robert Strozier (Dkt. # 17). Plaintiff's motion for partial summary judgment (Dkt. # 25) and motion to lift stay (Dkt. # 35) are therefore STRICKEN as MOOT.

As to the causes of action that have not been dismissed with prejudice, if plaintiff and her counsel believe they can, consistent with their Rule 11 obligations, remedy the deficiencies identified in this Order, they may file a motion for leave to amend that complies with LCR 15 within thirty (30) days of the date of this Order.

IT IS SO ORDERED.

ORDER GRANTING MOTION TO DISMISS - 26

Dated this 6th day of May, 2026.


Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION TO DISMISS - 27